## CADY VS. THE CITY OF WATERTOWN.

Chap. 128, Pr. Laws of 1856, authorized the execution of bonds by the city of Watertown, and their delivery to persons designated as "City Improvement Commissioners," who were to act for the city, "with full power to negotiate the sale of said bonds, and to take charge of and superintend the expenditure of

the proceeds thereof" for certain specified objects, including the building of certain bridges, the purchase of school house lots, &c. *Held*, that the commissioners were not required to sell the bonds for *cash*, but a direct payment of a portion of them for school house lots, and for labor and materials used in building said bridges, was a sale within the meaning of the act.

The act provided that all contracts made by the commissioners under it should be submitted to and approved by the city council before they should be binding upon the city. One of the six commissioners proposed to sell the board lots belonging to him, for school house sites; and at a meeting of the commissioners, at which the vendor and three others were present, the other three voted to accept the proposition, the vendor himself not voting. This contract, and that providing for the payment of bonds for labor and materials used in constructing bridges, were submitted to and ratified by the city council. *Held*, that if there had been any irregularity in either of the contracts, as made originally by the commissioner, (which the court thinks was not the case) it would have been cured by such subsequent ratification.

APPEAL from the Circuit Court for *Jefferson* County.

This action was brought upon certain coupons annexed to bonds numbered from 112 to 119, 29, 30, 33, 96 and 97, issued by the *City of Watertown* in April, 1856, and alleged to have been issued in pursuance of ch. 128, Pr. & L. Laws of 1856. The bonds numbered 112 to 116 are alleged to have been duly sold and delivered by the city to the plaintiff, through the commissioners named in said act and empowered thereby to negotiate the bonds to be issued under the act, and superintend the expenditure of the proceeds. The bonds numbered 117, 118 and 119 are alleged to have been sold in like manner to A. R. Guilding; those numbered 29 and 30 to Frederick Uehling; that numbered 33 to Daniel Collins; and those numbered 96 and 97 to Shandrew & Smith. The complaint alleges payment by the city of the coupons for 1858, 1859, and January 1, 1861; and demand and neglect of payment of the subsequent coupons, upon which the action was brought. The defense set up in the answer, as to the coupons annexed to bonds 112 to 116, was as follows: That at the time the bonds were delivered to the commissioners (to be negotiated by them), the plaintiff was one of said commissioners, and continued to be such till after the disposal of the bonds as mentioned in the complaint; that plaintiff proposed to the commissioners to sell

the city certain lots belonging to him, for a school house site, at a specified price, to be paid in bonds at par; that at a meeting of four of the commissioners in June, 1857, the plaintiff being one of the four, they agreed to accept plaintiff's offer provided the common council of said city would approve the same; that after the common council had approved the purchase, in July, 1857, said commissioners, four only being present, and plaintiff one of the four, accepted a deed of said lots from the plaintiff, and delivered to him said bonds; that said lots were at that time, and ever since have been, unfit for a school house site, and not worth more than half the price agreed upon; and that defendant had offered long before the commencement of the action, and by said answer renewed the offer, to reconvey the lots to the plaintiff upon his surrendering the bonds paid therefor with the coupons.—As a defense to the action, so far as based upon the coupons annexed to bonds 117, 118 and 119, the answer alleges that those bonds were delivered to A. R. Guilder at sixty per cent. of their par value, in part payment for building a bridge in said city, built by Guilder under a contract with the commissioners; that plaintiff, as one of said commissioners, assented to such delivery; that Guilder immediately afterwards transferred said bonds to the plaintiff at sixty per cent. of their par value, in pursuance of an understanding and agreement entered into between Guilder and plaintiff before the delivery of the bonds to the former.—As a defense to the action, so far as founded on bonds 29, 30, 33, 96 and 97, the answer alleges that they were delivered by the commissioners at sixty per cent. of their par value, to Stager, Uehling, Collins, and Shandrew, Cady & Co., in payment for the building of a bridge, and for materials furnished for such bridge, built under a contract between Stager and said commissioners.—The plaintiff replied to the answer, denying that at the meeting of the commissioners at which his proposition to sell them the lots for a school house site, mentioned in the answer, was accepted, subject to the ap-

proval of the common council, the plaintiff voted with the other commissioners, but alleging that he abstained from voting, and that the other three commissioners voted unanimously in favor of accepting his proposition. A similar denial and allegation are made as to the action of the commissioners in accepting the deed of said lots. The reply also alleges that the common council of said city, on the 29th of June, 1857, adopted a resolution recommending said "Improvement Commissioners" to contract with plaintiff for said lots in accordance with his said proposition, and that the commissioners accepted a deed from him for the same, July 8th, 1857, and delivered to him the bonds as aforesaid, and immediately after took possession of the lots and began to make improvements thereon. As to bonds 117 to 119, the reply alleges that by a resolution passed June 29, 1857, the common council of said city authorized the "Improvement Commissioners" to sell so many of said bonds as might be necessary to pay the indebtedness of the city contracted by said commissioners, at the best price they could obtain for them; that on the 8th of July following, the commissioners, by resolution, authorized their president and clerk to pay off such indebtedness in said bonds at sixty cents on the dollar, which was a fair price for them, and the best that could then be obtained in the market, and that the transfers of said bonds to the several persons above named, were made by the president and clerk of the board of commissioners in pursuance of this resolution. The reply also denies the allegations of the answer as to the immediate transfer of bonds by Guilder to the plaintiff, and that this was done in accordance with an agreement or understanding entered into before the delivery of the bonds to Guilder.

The defendant demurred to the reply for insufficiency, and the court sustained the demurrer; from which order the plaintiff appealed.

*H. Barber, Jr.*, and *C. B. Skinner*, for appellant, to the point that the disposition made of the bonds by the commissioners

was a *sale*, cited 2 Blacks. Comm., 446; 2 Kent's Comm., 468; Story on Con., § § 773, 778.   To the point that the legislative grant of power to the city must be liberally interpreted with a view to the accomplishment of its design, and that the disposal of the bonds directly must be held a good execution of these powers, they cited *Clark v. Farrington*, 11 Wis., 324 et seq. They also contended that the act contained a grant of specific powers to the mayor and common council of the city and not to the board of commissioners, and that the facts disclosed by the reply show the disposal of all the bonds in question to have been the direct act of the mayor and common council, and that therefore the case came directly under the decisions in *Clark v. Farrington, supra,* and *Mills v. Gleason,* 11 Wis., 470, and the cases there relied on, to wit, *Central R. R. Company v. Clayes,* 21 Vt., 30; *Greenville & C. R. R. Co. v. Woodsides,* 5 Rich., 148; *McRea v. Russell,* 12 Iredell, 224; *Treadwell v. Salisbury Man. Co.,* 7 Gray, 405; 10 Wend., 342.   The objection that the bonds were disposed of below par is not tenable.   *Mills v. Gleason, supra.*   As to the five bonds which passed directly from the city to the plaintiff, counsel contended, (1.) That in a transaction of that kind between the trustee and the cestui que trust, a purchase of the trust property by the trustee is not absolutely void, and will be sustained if characterized by good faith on the part of the trustee.   *Puzey v. Senier,* 9 Wis., 376; Law Reg., April, 1860, p. 352.   (2.) That the city waived any objection of that nature by its ratification of the transaction, viz., by the resolution of the common council, the subsequent improvement of the lots, and the payment of interest on the bonds.   *Mills v. Gleason,* 11 Wis., 491.

*Enos & Hall,* for respondent:

1. The commissioners had no power to dispose of the bonds for anything but money. Sec. 5, ch. 128, Pr. & L. Laws of 1856. The bonds, having been disposed of by the commissioners in a different way, in violation of the trust reposed in them, are void in the hands of a holder with notice.   *Starin v. Town of*

*Genoa*, 23 N. Y., 453–55; *Gould v. Town of Sterling*, id., 458–61. 2. When the common council delivered the bonds to the commissioners, its power to in any way interfere with them ceased. The sale of the bonds and the expenditure of the funds derived therefrom, is a trust specially confided to the commissioners. They were not.acting for the city authorities, but for the whole people of the city. No act of the city council, therefore, can ratify any unauthorized act of the commissioners. *Delafield v. State of Illinois*, 26 Wend., 225–7; *S. C.*, opinion of VERPLANCK, Senator, 2 Hill, 175; *Town of Rochester v. The Alfred Bank*, 13 Wis., 432. 3. The plaintiff, being entrusted with the bonds in question with power to sell, could not purchase them himself. *Michoud v. Girod*, 4 How. (U. S.), 552; *Gardner v. Ogden*, 32 N. Y., 327, and cases there cited. The attempt of the plaintiff to escape from this difficulty by alleging in his reply that he did not vote or act with the other commissioners in accepting his proposition or in receiving his deed, only involves him in another difficulty. The authority conferred upon the commissioners is joint, and no quorum is fixed by the act creating the board. At common law, all must have been present and consulted in order to give vitality to their action, although a majority might decide. 7 Cow., 530; 21 Wend., 211–18. Sec. 3, ch. 5, R. S., provides that "where words purport to give joint authority to three or more officers or persons, they shall be construed to give the authority to a majority of such officers or other persons." Under this provision four commissioners were authorized to do any act within the scope of their authority, provided they all concurred in the act to be done. If then only three of the commissioners voted officially in accepting the plaintiff's proposition and his deed, and delivering the bonds to him, he never acquired title to the bonds, nor the city to the lots. *Powell v. Tuttle*, 3 Coms., 396.

*By the Court*, COLE, J. We are unable to adopt the construction placed upon the act of 1856 (see chap. 128, Priv.

Laws of 1856, p. 211) by the counsel for the respondent. He contends that that act gave the commissioners no power whatever to dispose of the bonds for any thing *but cash*; and that if they transferred them to persons willing to take them in payment for school house sites and for making the improvements therein authorized, it was a violation of the power and authority vested in them, and that the bonds are void and should be so declared by the court.

The 5th section of the act required that the bonds, after they had been executed as therein prescribed, should be delivered to the commissioners, who were appointed and designated as "the city improvement commissioners of the city of Watertown," and who were to act for and in behalf of the city, and were vested "with full power to negotiate the sale of said bonds, to take charge of and superintend the expenditure of the proceeds thereof," for the objects therein mentioned. The occasion of the law, or the object to be accomplished by issuing the bonds, was to provide the means "to purchase two fire engines and the erection of houses for the same; the erection of two school houses on the union plan, and the location and purchase of suitable lots for the same; the building of two bridges in said city, across Rock River, at," &c. Now it appears that the first five bonds described in the complaint were transferred to the appellant to pay for lots for school house sites sold and conveyed by him to the city. The others were sold or transferred by the commissioners as part payment for labor and materials furnished for the erection of a bridge. And it is insisted that this disposition of the bonds was not valid—was not an execution of the power given the commissioners "to negotiate the sale of the bonds," but was an appropriation of them in a manner not authorized by the act of the legislature.

There is, however, nothing in the act which requires the commissioners to sell the bonds for cash only, and we can perceive no sufficient reason for placing such a restriction upon their power. Suppose the commissioners found a person owning lots

suitable for school sites, which they desired to purchase, who was willing to sell them and take his pay in the city bonds instead of the money. Can it be said to be a departure from the power to negotiate the sale of the bonds, for the commissioners to pay him directly for his property in these securities, without resorting to the idle ceremony of first selling him the bonds for cash and then paying him back the same money for his lots the next instant? Can the law attach so much importance to the mere form of making the sale, and disregard the essential nature of the transaction? It appears to us not. We have no doubt but the disposition made of the bonds by the commissioners was a sale of them within the meaning and intent of the act, and was a proper execution of the power. *Clark v. Farrington,* 11 Wis., 306; *Blunt v. Walker,* id., 334; *Cornell v. Hichens,* id., 353.

We were referred on the argument to the cases of *Starin v. The Town of Genoa* and *Gould v. The Town of Sterling,* 23 New York, 439, in support of the views of the respondent. It was there held, among other things, that a power given certain town officers to borrow money on the credit of the town and pay it over to a railroad corporation, taking in exchange therefor the stock of such corporation, was not well executed by exchanging the bonds of the town for an equal nominal amount of stock, leaving it in the power of the corporation to sell such bonds at a discount. The reasoning in those cases has always appeared to me to be exceedingly refined and technical, but I shall not stop to examine it now. There is nothing in those cases which militates against the views already expressed. Here the power given was, to sell the bonds and apply the proceeds in a certain manner; and the commissioners sold the bonds directly for the things they wanted. In doing this we do not think they were guilty of any breach of duty or transgressed any authority in them vested.

Another objection taken to the validity of the first five bonds is, that they were transferred to one of the commissioners in

payment of lots purchased of him. It is said that the appellant, being intrusted with the bonds as commissioner with power to sell them, could not himself purchase. There were six commissioners appointed by the act, and it is alleged, in substance, in the reply of the appellant, that he made a proposition to the commissioners for the sale of his lots, and that three of them voted to accept it, he himself refraining from voting upon the question. Besides, he shows that the contract was referred to the common council, who, after examination, ratified and approved of the purchase. The 7th section of the act provided that all contracts made by the commissioners by virtue of any powers conferred by the act should be submitted to and approved by the city council before they should be binding upon the city. If indeed there was any informality or irregularity in the contract of purchase as made by the commissioners originally, it was fully cured or removed by the subsequent ratification and confirmation of the contract by the city council. And for a like reason it is very clear that if there was any irregularity in applying the bonds to the payment of the indebtedness of the city for building the bridge, it was cured by the action of the city council. We do not think there was any such irregularity, but that the disposition made was strictly within the scope of the authority vested in the commissioners. But if we are wrong in this, there can be no doubt that the transfer and application of these bonds were valid, having been ratified and confirmed by the city authorities.

It results from this that the demurrer to the plaintiff's reply was improperly sustained. The order sustaining it is therefore reversed, and the cause remanded for further proceedings according to law.