MASICH, RESPONDENT, v. AMERICAN SMELTING & REFIN-
ING CO. ET AL., APPELLANTS.

(No. 3,012.)

(Submitted September 23, 1911.  Decided October 21, 1911.)

[118 Pac. 764.]

*Personal Injuries—Master and Servant—Duty of Master—Safe
Place and Appliances—Warning—When Unnecessary—"Sim-
ple" Appliances—Inspection—Duty of Servant.*

Master and Servant—Liability of Master—Incorrect Rules.
   1.   Neither the proposition that the master who orders his servant
to use known dangerous machinery is liable for the resulting injury,
nor the one that the giving of an order which is dangerous to execute
is negligence, states a correct rule of law of general application.

Same—Extent of Duty of Master to Servant.
   2.   When the master has discharged the duty incumbent upon him
to exercise reasonable care to furnish his servant a reasonably safe
place in which to work, reasonably safe appliances with which to
work, and reasonably competent fellow-servants with whom to work,
and to maintain this condition, he is not liable for resulting injuries.

Same—"Reasonably Safe" Place and Appliances—Meaning of Term.
   3.   By the term "reasonably safe," used in connection with the rule
referred to in paragraph 2 above, is meant a reasonably safe place
and reasonably safe tools and appliances, when considered with refer-
ence to the character of work to be performed by the servant.

Same—Dangerous Machinery—Complaint—Proof—Judicial Notice.
   4.   The matters and things of which courts take judicial notice, enu-
merated in section 7888, Revised Codes, cannot be enlarged or
diminished by judicial construction; hence, the dangerous character
of an ore-crushing machine not being one of such matters, the as-
sumption that it is dangerous may not be indulged, but the com-
plaint must allege and the proof show that such is its character.

Same—Warning to Servant—When Unnecessary.
   5.   The master is not under any legal obligation to warn his adult
servant, who is of sound mind, of dangers of his employment which
he cannot fail to see and comprehend.

Same—"Simple" Appliances—Inspection—Duty of Servant.
   6.   A pine stick three feet long, an inch wide and half an inch thick,
selected by plaintiff himself to assist him in performing his work

about an ore-crusher, *held,* to have been such a simple appliance as to make the rule relieving the master from the duty of inspection, and imposing it upon the servant, applicable.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

Action by Nick Masich against the American Smelting and Refining Company and another. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

In behalf of Respondent, *Messrs. Galen & Mettler,* and *Mr. W. D. Tipton,* submitted a brief; *Mr. F. W. Mettler* argued the cause orally.

A master who orders his servant to use known dangerous machinery is liable for the resulting injury. (16 Current Law, 822, note 40.) The giving of an order which is dangerous to execute is negligence, and the master is responsible for injuries following therefrom, though the exact injury be anticipated. (*Id.* 832, 833, note 78.) ''Questions of negligence as well as contributory negligence are generally within the province of the jury, which should not be invaded by the courts except in clear cases.'' (*Kent Mfg. Co.* v. *Zimmerman,* 48 Colo. 388, 110 Pac. 193; *Colorado Midland Ry. Co.* v. *O'Brien,* 16 Colo. 219, 27 Pac. 701.)

The one error alleged, so far as instructions are concerned, is the failure of the court to give defendants' offered instruction No. 5, which would have taken from the jury all consideration of the stick as a defective appliance, instead of leaving it to the jury as a question of fact. In support of this alleged error the case of *Longpre* v. *Big Blackfoot Co.,* 38 Mont. 99, 99 Pac. 131, is cited. We think the case could be cited with more propriety as supporting the action of the court in refusing the offered instruction, since this court declared that ''the better rule, it seems to us, is that it is a question for the jury. under the rule laid down hereafter, to determine from the evidence submitted, including the character of the appliance and the *apparent in-*

*telligence and experience of the servant,* whether the master has discharged his duty'' in furnishing a suitable appliance.

''The reason for warning a servant is either to impart to him knowledge that he does not possess, or to impress upon him the necessity of being careful and bearing in mind the danger.'' (*Kuphal* v. *Western Mont. F. Co.,* 43 Mont. 18, 114 Pac. 125.) In other words, the rule with regard to the duty of the master to warn or caution an inexperienced workman, is not the same as in the case of an experienced workman; or, to put it in another way, the element of the inexperience and ignorance of the workman is a factor to be taken into consideration by the jury. The evidence before them, including the evidence furnished by the manner and appearance of the witness upon the stand, showed that plaintiff was not an intelligent or experienced workman. The very fact that the accident occurred in the manner that it did, would be some proof of such lack of intelligence and experience. Whether warning is necessary depends upon the age, capacity, intelligence and experience of the employee as well as upon the nature of the danger and the surrounding conditions and circumstances. Adult and experienced servants need not be warned or instructed of any danger, of which their age and experience charges them with knowledge and appreciation, or renders them capable of observing; while young, inexperienced or otherwise incapacitated servants should be informed of all dangers of which persons of their limited capacities would not know. (16 Current Law, 836–842, and notes.)

Whether an employee is guilty of contributory negligence resulting in his injury by machinery depends upon his experience or lack of experience in the employment and his knowledge or lack of knowledge of the risks incident to it. (*Stephens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45.) The burden of proof is on defendant to establish the defenses of contributory negligence and assumption of risk. (*Id.*)

The fact that the plaintiff in this case was an ignorant foreigner unable to express himself in the English language and testified through an interpreter, was proper to be considered by

the jury in determining whether plaintiff understood and appreciated the danger and, therefore, assumed the risk. (*Hill* v. *Nelson Coal Co.*, 40 Mont. 7, 104 Pac. 876.) In determining the question of assumption of risk with respect to the absence of a device on a machine, the nature of the servant's previous employment, his experience with machinery, his opportunities to learn by observation and experience, the equipment employed to prevent the occurrence which caused the injury, and his knowledge with respect to such matters, must be considered. (*Kent Mfg. Co.* v. *Zimmerman, supra.*) Assumption of risk rests upon negligent acquiescence with full actual or constructive knowledge of the dangers and appreciation of the risks naturally incident to the employment or arising from the particular situation in which the work is done. (16 Current Law, 880, note 13.) The more recent tendency of the courts is against any extension of the doctrine of assumed risk. (*Id.* 881, note 15.) It is the master's duty, and not the servant's, to exercise ordinary care in the discovery of dangers in instrumentalities with which the servant is at work. (*Johnson* v. *McLeod,* 111 Minn. 479, 127 N. W. 497, 1120.) The servant has not assumed the risk of the negligence of the master, but has the right to rely upon the presumption that the master has not been negligent. (*Elliott* v. *Sawyer* (Me.), 77 Atl. 782.) The servant is not as a matter of law required to neglect his own duty in order to assure himself that the master has performed his. (*Goessel* v. *Central R. Co.* (N. J.), 78 Atl. 681.) Even when the master has done all that he can to make the work place safe, he has a further duty, if there is a secret danger, to notify the servant of it, so that he may refrain from entering employment if he does not choose to assume the risk. (*Blaisdell* v. *Davis Paper Co.*, 75 N. H. 497, 139 Am. St. Rep. 735, 77 Atl. 485.) Whether the risk was that of the master's negligence or assumed is a question of fact for the jury. (*Anustasakas* v. *Int. Cont. Co.*, 57 Wash. 453, 107 Pac. 342.) In order to charge an injured servant with assumed risk it must be shown not only that he knew the risk, but also that he appreciated the danger, and it is a question of fact for

the jury, to decide from all the circumstances whether he assumed the risk. (*Stewart* v. *Pittsburg etc. C. Co.*, 42 Mont. 200, 111 Pac. 723; *Poor* v. *Madison R. P. Co.*, 41 Mont. 236, 108 Pac. 645.) "If upon this question different men of sound minds might draw different conclusions, then the question must be submitted to the jury." (*Osterholm* v. *Boston & M. C. C. & S. Min. Co.*, 40 Mont. 508, 107 Pac. 506.)

*Mr. E. C. Day*, and *Messrs. Wight & Pew*, for Appellants, submitted a brief and reply brief. *Mr. Day* and *Mr. Wight* argued the cause orally.

There are many cases showing a disposition on the part of the courts to relieve the servant from the assumption of risk, or at least to allow the question to go to the jury, in a case where the servant, by peremptory order of the master, is called upon for immediate action, even though the danger is one which, under ordinary circumstances, would be held to be obvious. The theory of the courts in drawing a distinction in these cases is founded upon the proposition that where a servant is suddenly called upon to perform a given task which requires immediate execution upon his part, he has not the opportunity for inspection and calm deliberation, and consequently as strict a rule with reference to his own duty to protect himself from injury is not applied against him, as in the case where he is acting under the general orders of his employment. (See *Illinois C. Ry. Co.* v. *Atwell*, 198 Ill. 200, 64 N. E. 1095.)

In the case at bar, whereas the defendants are charged with negligence by reason of the foreman then and there summoning plaintiff from his usual employment and directing the performance of a dangerous act, the plaintiff's testimony shows that the dangerous act which he performed was as a matter of fact in the usual course of his duties. In view of the fact that a different rule has been applied in cases of a special order requiring instant execution, and in cases where the servant acts under general orders in the usual course of his employment, we

contend that this allegation is a material allegation and the proof with reference to it fails utterly.

In the case of the *City of Greeley* v. *Foster,* 32 Colo. 292, 75 Pac. 351, the rule is laid down that the servant assumes the risk of injuries received where the order, through obedience to which he was hurt, was to do a thing he was regularly employed to do.

Furnishing plaintiff with a defective stick: This court in the case of *Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, had under consideration the matter of simple appliances.   The *Longpre Case* presents a different situation than the case at bar. The defect was in the handle of a cant-hook, and this court reversed the lower court because of an instruction charging the defendant with the duty of inspection, rather than submitting to the jury the question of whether or not the tool was of a character which an ordinarily intelligent and prudent man, under all of the circumstances, would have inspected before turning the same over to his servant. It was also held that this is a question "ordinarily" submitted to the jury. It is evident that the court in using the word "ordinarily" did not mean that this question should be submitted to a jury in all cases.

The evidence utterly fails to show that there was any "defect" in the stick. Both plaintiff and Bozo Nikcevich show that the usual and customary appliance was a stick chopped out of a piece of plank. The splinters and slivers were not shaved off from any of them. Plaintiff knew this. He says that the stick was the same as he had always used. Where was the "defect"? It certainly cannot lie in its having slivers and splinters. One might as well say there was a defect in the dog because he had teeth.

Failure to warn: As to any incapacity on the part of respondent, we are confident the court will search the record in vain for a suggestion of any lack on his part of full mental and physical powers at the time of the injury. It is true that he was not educated in English. History mentions many men of considerable intelligence whom we have reason to believe were also deficient in this respect. "Warning is not required against

obvious dangers in ordinary operations which are matters of common knowledge to all." (*Wagner* v. *Plano Mfg. Co.,* 110 Wis. 48, 85 N. W. 643; *Dougherty* v. *West Superior I. & S. Co.,* 88 Wis. 343, 60 N. W. 274; *Mitchell* v. *Boston & M. etc. Co.,* 37 Mont. 575, 97 Pac. 1033.)

Plaintiff assumed the risk. (See *Schroder* v. *Montana I. Works,* 38 Mont. 474, 100 Pac. 619; *Dickenson* v. *Vernon,* 77 Conn. 537, 60 Atl. 270; *Sullivan* v. *Simplex E. Co.,* 178 Mass. 35, 59 N. E. 645.)

Under the facts disclosed in this case, the motion for nonsuit should have been granted. (*Anderson* v. *Northern Pacific Ry. Co.,* 34 Mont. 181, 85 Pac. 884; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Nolan* v. *Montana C. Ry. Co.,* 25 Mont. 107, 63 Pac. 926; *McKay* v. *Montana U. Ry. Co.,* 13 Mont. 15, 31 Pac. 999; *Cummings* v. *Helena & L. S. & R. Co.,* 26 Mont. 434, 68 Pac. 852; *Palmer* v. *Harrison,* 57 Mich. 182, 23 N. W. 624.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for personal injuries. At the conclusion of plaintiff's case in chief a motion for nonsuit was interposed and overruled. Defendants elected to stand upon their motion and declined to introduce any testimony. The cause was submitted to a jury, which returned a verdict for plaintiff, and judgment was rendered and entered thereon, from which judgment, and an order denying their motion for a new trial, the defendants have appealed.

Aside from a physician, who testified to the extent of plaintiff's injury, and an insurance adjuster, who produced the standard mortality tables and testified to the cost of annuities, the only witnesses introduced were the plaintiff and one Bozo Nikcevich. Each of these witnesses testified through an interpreter. The record recites that it contains all of the evidence taken upon the trial. This recital must be accepted as true; but as presented to us the evidence is so brief, so fragmentary,

and presented in such manner that we are unable to state the facts with any degree of certainty that our statement is correct. Upon the trial the questions of counsel were directed to the interpreter, instead of to the witnesses, and the responses appear to be the interpreter's construction of the witnesses' answers, rather than the answers themselves translated into English.

So far as we can gather the facts from the evidence and from the admissions in the pleadings, they are substantially the following: The plaintiff, a native of Montenegro, thirty-six years of age, was employed by the defendant smelting company to work in its smelting and refining plant at East Helena. It appears that the ore was passed through a breaker, and was then elevated and passed through a crusher, a machine consisting of rollers of some kind which revolve toward each other. It frequently happened that when the ore came to the crusher there were pieces of rock that, instead of going through the crusher as intended, would play upon the rollers, being so large or so shaped that the rollers would not grasp them readily, and it became necessary to force them between the rollers, or, if this could not be done, to remove them. The rollers were incased in a sort of box, with a covering. When a rock became lodged, the covering was raised, water poured on the rollers, and by means of a wooden stick small pieces of ore were forced about the refractory rock, and the whole made to go between the rollers, if possible. If, however, this result could not be attained, it became necessary to remove the rock with the stick, or, if not possible by that means, to have the machinery stopped and remove it by hand. The plaintiff had been employed about the smelting works for some two years or more. For about three months immediately prior to the date of his injury he was engaged in running ore cars in the room where the crusher, upon which he was injured, was situated. On February 8, 1909, he was promoted, his wages increased, and he was given work as a shoveler. His duties required him to shovel ore into the breaker, and, whenever a rock became lodged on the rollers of the crusher, to force it through or remove it. At the time he assumed this

last employment the foreman instructed him as to the manner of removing rocks which could not be made to pass between the rollers. The company furnished sticks cut from rough pine boards. On February 10, while the plaintiff was at his work, a rock came from the breaker which would not pass between the rollers. The plaintiff attempted to force it through, and then to remove it by means of one of these sticks, but was unsuccessful. He was advised by an experienced fellow-workman to go to the office and have the foreman stop the machinery until the rock could be removed by hand. Acting upon this advice, the plaintiff went to the office; but the foreman was not in, and he returned to his machine and again attempted to remove the rock by means of the stick, but failed, and went to the office a second time, but was again unable to find the foreman, and returned, and for the third time endeavored to remove the rock by means of the stick. While thus engaged, the stick he was using was caught between the rollers, and in attempting to loosen it plaintiff's hand and arm were drawn between the revolving rollers and so badly crushed that amputation of the arm between the elbow and shoulder was necessary.

In charging the jury the court undertook to analyze the pleadings and state the issues. There are not any objections made to the instructions given, and we shall adopt, for the purposes of this appeal, the trial court's theory of the pleadings. The plaintiff charged the defendant company and its foreman with negligence in the following particulars: (a) In directing plaintiff to remove the rock by means of a stick while the machinery was in motion, instead of stopping the machinery; (b) in failing to warn plaintiff of the danger of attempting to remove the rock from the rollers while the machinery was in motion; and (c) in furnishing plaintiff with a defective appliance with which to work. Each defendant denied negligence, and the defendant company pleaded contributory negligence and assumption of risk. The specifications of error are directed to the insufficiency of the evidence and the refusal of the trial court to give defendants' offered instruction No. 5.

1. The complaint alleges that the foreman "ordered and directed this plaintiff to assist in the operation of said crusher, which said work was outside of and different from the usual and ordinary employment of this plaintiff." The evidence fails altogether to sustain this charge. The plaintiff's own testimony discloses that he voluntarily assumed the duties of this employment, and that his transfer from the work of carman to the position of shoveler was in the nature of a promotion at advanced wages.

The plaintiff urges upon us two propositions: (1) "A master [1] who orders his servant to use known dangerous machinery is liable for the resulting injury"; and (2) "the giving of an order which is dangerous to execute is negligence." The promulgation of either as a general rule of law would result in the complete destruction of many of the most important industries in this state. Quartz mining cannot be carried on without the aid of dangerous explosives, while most, if not all, high-power machinery operated by steam or electricity is essentially dangerous. Smelters, sawmills, and machine-shops would close at once, if plaintiff's contention should be held to be correct; for in every dangerous employment at least the master would be made an insurer. But neither of the foregoing propositions states a correct rule of law of general application. Either one may be correct under certain circumstances or with certain limitations, but we do not think there can be found any authority for asserting either as a general rule. In this state it is settled that the employer's duty to his servant is to exercise reasonable [2] care to furnish a reasonably safe place in which to work, reasonably safe appliances with which to work, and reasonably competent fellow-servants with whom to work, and to maintain this condition. When the master has discharged this duty, he cannot be held liable for resulting injuries. But when we speak [3] of a reasonably safe place and reasonably safe tools and appliances, of necessity we mean reasonably safe when considered with reference to the character of work to be performed. A room in which there is rapidly revolving machinery—knives,

saws, belts, pulleys, exposed cogwheels, and the like—may, however dangerous in fact, be a reasonably safe place in which to carry on certain classes of work. Likewise dynamite or nitroglycerin in the hands of a skilled miner may be a reasonably safe appliance with which to conduct mining operations. And so a rock-crushing machine may be a reasonably safe appliance for conducting the business of smelting and refining.

But there is a further and conclusive answer to the plaintiff's contentions. There is not any allegation in the complaint [4] that the ore-crusher was a dangerous piece of machinery under any circumstances, and neither is there any description of the machine or its manner of operation given from which such an inference can be drawn. The matters of which courts take judicial notice are enumerated in the Code (Rev. Codes, sec. 7888), and cannot be enlarged or diminished by judicial construction. Since the dangerous character of an ore-crushing machine—if such is its character—is not one of the matters enumerated above, we cannot assume that such machine is dangerous. The mere fact that plaintiff was injured while engaged about the crusher is not alone sufficient to give character to it as dangerous; for, if it were, every piece of machinery upon which an injury occurs would *ipso facto* become dangerous, however simple or harmless in reality. Neither are there any allegations in the complaint from which there can be deduced the conclusion that the operation of removing an obstruction from the crusher by means of a stick was dangerous. It cannot be determined from the complaint whether the rollers of the crusher operated an inch apart or directly upon each other, while plaintiff's testimony is: ''Yes; the rolls break a big rock. The rolls would not break the rock unless it was a certain size. I cannot tell how large a piece of rock they would break. It depends; sometimes could break up small, sometimes larger.''

The general rule of law defining the duty of the master to warn his servant and the limitation placed upon that rule are aptly stated by Thompson in his Commentaries on the Law of Negligence, as follows: ''Generally speaking, an employer is

bound to warn and instruct his employees concerning dangers known to him, or which he should know in the exercise of reasonable care for their safety, and which are unknown to them, or are not discoverable by them in the exercise of such ordinary and reasonable care as, in their situation, they may be expected and required to take for their own safety." (Section 4055.) "In the case of an adult servant of sound mind, the rule is understood to be that where the dangers of the employment are [5] visible, so that any man of ordinary intelligence, though not an expert, could not fail to see and comprehend them, an employer is under no legal obligation to warn the servant of their existence." (Section 4061.) These rules have received the approval of courts generally. It appears impossible to conceive of any case where the duty to warn arises in the absence of danger. Every decided case, upholding the general rule stated above, predicates its assertion upon the fact of actual danger. Since, then, the complaint does not charge that the ore-crusher was a dangerous machine, or that the operation of forcing rocks between the rollers or removing them by means of a stick was dangerous, and since the evidence before us, at most, does not go further than the allegations of the complaint, it is impossible to sustain the charge of negligence upon either one or both of the first two theories upon which the case was submitted to the jury.

2. The third ground of complaint is that the defendant furnished plaintiff a defective appliance with which to do his work. There is not any complaint made that the plaintiff was required to use a wooden stick. So far as disclosed, a stick was a perfectly proper instrumentality and one well adapted to the use intended. The charge of negligence, however, is found in the allegation that the particular stick with which the plaintiff attempted to do his work was defective in this: "That the surface thereof was roughened and splintered at the point where it was grasped by the right hand of plaintiff, and that by reason of said roughened and splintered condition of the surface of said stick the glove of plaintiff, which was upon his right hand at

the time he grasped said stick for the purpose of removing said obstruction, became fastened to and was held by said stick of wood, and it was impossible for plaintiff to withdraw his hand from said glove, or detach said glove from its connection with said stick, by reason whereof plaintiff's hand and arm were drawn between said rolls and crushed."

It is alleged that at the time the injury occurred the defendants knew of the defective condition of the stick. It appears that there were other ore-crushers in use in the same building, and that defendants furnished a number of these sticks for the use of the several shovelers. It does not appear whether this particular stick in question was in a defective condition when first furnished by defendants, or whether it became unsafe through use; and as negligence will not be presumed, but must be made to appear, the negligence, if any, must be predicated upon the failure of defendants to use reasonable care to see that the appliance was kept reasonably safe for the intended use at the time the accident occurred, and this involves the question of inspection.

In *Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131, this court, discussing the question now under consideration, said: "Among the particular duties incumbent upon him [the master] is that of inspection of machinery and appliances to discover defects in them, both at the time of furnishing them and during the course of the employment; for this is the only means by which he may guard the safety of those employed by him in the use of them. * * * But it is not always absolute. It is not the duty of a railroad company or other persons engaged in great industrial enterprises to inspect, much less to test, every tool or appliance put into the hands of an employee. This duty arises only when the appliance is of such a character that a man of ordinary prudence would, under the same circumstances, make an inspection as a precaution against injury to his servant. The master is not required to inspect simple appliances, such as hammers, saws, spades, hoes, lanterns, push sticks, and the like, the character and use of which are

understood by all alike. A tool of this class is so simple in its construction and so well understood by men of ordinary intelligence that it would seem absurd to say that the master should make a careful inspection of it before he commits it to the hands of his servant, who has the same capacity to understand its character and uses that he himself has.'' (*Garragan* v. *Fall River Iron Works Co.*, 158 Mass. 596, 33 N. E. 652.)

There is not any contention made that plaintiff was required to act in haste, or that he did not have an opportunity to inspect the stick with which he undertook to do his work. On the contrary, the evidence seems to warrant the conclusion that [6] he acted deliberately, selected the stick himself from several lying about, and was free to consume such amount of time as was reasonably necessary for the purpose of properly doing his work. The cases cited and relied upon by this court in the *Longpre Case,* above, fairly illustrate the exception to the rule which requires that the master shall inspect the appliances which he furnishes to his servant. So long as it is the rule of law that a master is relieved from the duty of inspecting simple tools and appliances, and that burden is imposed upon the servant, the rule must be susceptible of application, or it becomes a protection to the master in theory only, and is without practical value. In speaking of this subject, the supreme court of Texas, in *Gulf, C. & S. F. Ry. Co.* v. *Larkin,* 98 Tex. 225, 82 S. W. 1026, 1 L. R. A., n. s., 944, a case cited by this court in the *Longpre Case,* in considering the application of the rule to the case of a lantern globe, said: ''There is no greater risk in cleaning and using a lantern upon a locomotive engine, when drawing a train, than there would be to clean and use the same lantern in the performance of services about the barn lot; therefore there can be no difference in the care required. The conduct of the ordinarily prudent individual is the standard by which we must measure the duty of the corporation. If this requirement were sustained, then every farmer or housekeeper who furnishes an ax to his servant with which to cut wood for use upon the premises, or for other purposes, must use that

care which would here be required with regard to the lantern, by an inspection to discover the condition of the ax before he purchased it, and during the use of it by the servant he must keep up a course of inspection in order to insure safety. * * * There may be, and doubtless are, cases in which it is a question of fact that should be submitted to the jury as to whether the machinery or implement, tools, and the like, were of such character as to require inspection as a safeguard against danger; but there was no reason for submitting the question to the jury in this case. Therefore the court erred in not instructing the jury to find for the defendant.''

It will not do for plaintiff to insist that he was so far deficient in understanding that he could not detect the roughness or splintery condition of the stick. His own testimony discloses that he did not have any difficulty whatever in discovering the defects when they were called to his attention by his glove being caught on the stick. He says that he did not discover the defect until that time, but there is not any suggestion in the evidence that he ever gave any attention to the stick he selected. The complete description of this instrument as given in the record is a pine stick three feet long, an inch wide, and half an inch thick. If it was not a simple tool or appliance, then we are unable to imagine what application the term ''simple'' can have when used to characterize the instrumentalities of any occupation. In the *Longpre Case* this court did not go further than to hold that the duty of inspection is not absolute; but, following the doctrine announced in that case and the cases therein cited, we hold that there was not any negligence shown in the failure of these defendants to inspect this stick, and that the trial court erred in refusing to give defendants' offered instruction No. 5, which announced the correct rule of law applicable in this particular instance. Of the courts holding to the view we have expressed, some justify their conclusion upon the theory that, as to such simple tools or appliances, the servant assumes the risk of their use; others, upon the theory that failure to inspect such tools is not alone sufficient evidence of

negligence.   It is of little consequence which theory be adopted in the present instance, for upon either the defendants' motion for nonsuit should have been sustained.

The judgment and order are reversed, and the cause is remanded to the district court, with directions to set aside the judgment and dismiss the action.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.