## COMMONWEALTH PUBLIC SERVICE COMPANY OF MONTANA, Appellant, *v.* CITY OF DEER LODGE ET AL., Respondents.

(No. 7,182.)

(Submitted December 8, 1933. Decided January 12, 1934.)

[29 Pac. (2d) 667.]

*Messrs. Gunn, Rasch, Hall & Gunn* and *Mr. K. W. Mac-Pherson,* for Appellant, submitted an original and a supplemental brief; *Mr. M. S. Gunn* argued the cause orally.

52

54

*Mr. S. P. Wilson* and *Mr. Walter L. Pope,* for Respondents, submitted a brief; *Mr. Pope* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff, a taxpayer within the city of Deer Lodge, brought this action against the city to enjoin the issuance of bonds in the sum of $200,000 for the purpose of procuring a water supply and system, and the payment of the contract price for the construction of the system. A preliminary injunction was sought as to the issuance of the bonds, and, after hearing, it was granted in part. A supplemental complaint was filed, seeking to enjoin the performance of the construction contract. Issue was joined by appropriate pleadings on certain of the allegations found in the complaints. Trial of the issues thus raised was had before the court sitting without a jury, resulting in findings and judgment against the plaintiff and dismissal of the action. The appeal is from the judgment.

The evidence disclosed that the city of Deer Lodge was indebted during the years 1931 and 1932 in an amount so that the issuance of the bonds and the performance of the construction contract would result in the creation of an indebtedness in excess of the three per cent. limit prescribed by section 6 of Article XIII of our Constitution. An election was held in the city on August 31, 1931, for the purpose of obtaining authority to issue these bonds. The notice of election stated that there would be submitted to the electorate the following: "The question of issuing bonds in the sum of two hundred thousand dollars ($200,000.00), for the purpose of

procuring a water supply and constructing or acquiring a water system for the said city of Deer Lodge, which shall own and control such water supply and water system and devote the revenue therefrom to the payment of the debt." The notice further stated that there would be submitted: "The question of whether the said city of Deer Lodge, for the purpose aforesaid, may contract an indebtedness in excess of three per cent. of the total assessed valuation of the taxable property of said city of Deer Lodge as ascertained by the last assessment for state and county taxes."

The result of the election was canvassed by the city council, and it was found that 177 votes were cast in favor of the first above-quoted question or proposition, and 83 against it. It was also found that 157 votes were cast for the second above-quoted proposition or question, and 88 against it.

Notice of the letting of the contract for the construction of the system was given, wherein it was stated: "Contractor will be paid with 6 per cent bonds of the Deer Lodge city water bond issue." Lease & Leigland, pursuant to this notice, made a bid which stated: "This bid subject to legality of bonds and for acceptance within 30 days or longer if mutually agreed." At least one other bid was submitted pursuant to the notice, but the bid of Lease & Leigland was the lowest bid received. Thereafter, on the 19th of September, 1932, a contract in writing was entered into between Lease & Leigland and the city of Deer Lodge, wherein it was agreed that Lease & Leigland should accept as full compensation for the performance of the contract the lump sum of $137,850, being the amount specified in their bid. The bonds had theretofore been offered for sale in January and May, 1932, and thereafter were offered for sale on October 24, 1932. No bids were received in response to these various offers, and the bonds have not been sold.

The appellant makes numerous contentions which, if adopted, would result in the reversal of the judgment. It contends that the special election held for the purpose of authorizing the issuance of the bonds was illegal, for the reason that no sufficient notice was given, in that the notice failed to state the amount

of the indebtedness within, and the amount in excess of, the three per cent. limitation as provided in the Constitution, which it was proposed to incur.

Section 6, Article XIII, of the Constitution provides: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three (3) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void; provided, however, that the legislative assembly may extend the limit mentioned in this section, by authorizing municipal corporations to submit the question to a vote of the taxpayers affected thereby, when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt."

Our legislature has, by the enactment of a general statute (subd. 64, sec. 5039, Rev. Codes 1921), proceeded to exercise the power conferred upon it by the Constitution, i. e., to authorize cities to extend their limit of indebtedness for the purpose of the construction of sewer and waterworks systems. The section of the Constitution, together with the statute referred to, has been before this court for consideration in a number of cases, which we will presently notice. The legislature, however, by Chapter 17, Laws of 1933, enacted a curative statute, providing as follows: "That any election heretofore held for the purpose of authorizing any city of the state of Montana to create or increase the indebtedness of such city by issuing bonds for any of the purposes set forth in subdivision 64 of section 5039, Revised Codes of 1921, as amended, or sections 1 and 3, Chapter 160, Session Laws of Montana, 1931, not exceeding the limits therein set forth, and which election was held after notice, stating the time and place

of holding the election, the amount and character of the bonds proposed to be issued and the purpose thereof, was published and posted in the manner required by section 5279, Revised Codes of Montana, 1921, or section 8, Chapter 160, of the Session Laws of Montana, 1931, and at which election the proposal to increase said indebtedness and to issue such bonds received a majority of all votes tendered and of the votes cast at such election upon such proposition, be and the same hereby is legalized, ratified, confirmed, and declared valid to all intents and purposes; and all such bonds, whether issued or hereafter to be issued, are legalized and declared to be valid and legal obligations of and against the city issuing the same, regardless of any error, defect, omission, irregularity or departure from statute or city ordinance in the holding of and conducting of such election, or the registration therefor, or in any of the steps or proceedings relating thereto."

Before considering the previous decisions of this court adverted to—none of which involve the identical or any curative Act—it is well to note the effect of this enactment.

That the election in question comes within the provisions of the curative Act is beyond doubt. The facts in the record clearly warrant this statement. The law is a general one, relating to all cities in Montana coming within its terms. The legislature of a state may ratify any Act of a municipal corporation which it could have authorized. (*Weber* v. *City of Helena*, 89 Mont. 109, 128, 297 Pac. 455; *Charlotte Harbor & N. R. Co.* v. *Wells*, 260 U. S. 8, 43 Sup. Ct. 3, 67 L. Ed. 100.) The legislature, speaking with reference to public corporations, is the source of their power, the fountain-head of their authority. (*Judith Basin Land Co.* v. *Fergus County*, 50 Fed. (2d) 792.) The power of the legislature to ratify and confirm acts of these corporations by curative Act is co-extensive with its power to authorize their acts in the first instance. If the legislature by the enactment of subdivision 64 of section 5039, supra, exercised the authority granted to it by section 6 of Article XIII of the Constitution, to a less

degree than the authority conferred upon it, then such legislative limitations are beside the question here.

The question here presented with reference to the validity of the bonds is, not whether the notice was valid under subdivision 64, supra, but whether it is valid under the Constitution. The legislature by the curative Act of 1933 exercised the full measure of its power conferred upon it in this constitutional provision, and, in the exercise of this power, was bound only by the limitations contained therein.

Counsel for plaintiff urge that since under the decision of this court in *Butler* v. *Andrus*, 35 Mont. 575, 90 Pac. 785, and other cases, it was held that cities and towns could, in the issuance of bonds for sewer and waterworks systems, avail themselves of the debt limit in excess of the three per cent. provided by the Constitution, only in the event or to the extent that the indebtedness for the contemplated improvement exceeded the three per cent. limit, taking into consideration their existing indebtedness; therefore, it is said, it was necessary that the notice of election specify the amount of the proposed bond issue which would be within the three per cent. limitation and the amount under the extended limitation.

This court, in the case of *Butler* v. *Andrus*, supra, had before it a case wherein a city, at a time when there was a sufficient margin within the three per cent. limit, issued bonds pursuant to authority conferred as a result of an election for a waterworks system, and where it had been attempted as a result of the action of the city council to allocate the waterworks bond issue entirely within the extended limitation of indebtedness, thus conserving an unused margin within the three per cent. limitation. It was then sought to issue bonds for a public purpose which could only be included within the three per cent. limitation prescribed by the Constitution. The court held that the previous waterworks bond issue was included within the three per cent. limitation, thereby preventing the attempted conservation of the margin by the city council. In reaching that conclusion the court said: "The legislature in granting the privilege used the expression 'and an *additional*

indebtedness shall be incurred when necessary to *construct*,' etc. This language seems susceptible of but one construction. There may be no extension if there is no debt already contracted, for the word 'additional' qualifics the character of the debt to be contracted, and refers also to a pre-existing amount of indebtedness to which it may be added. The word 'necessary' defines the condition of affairs which requires the additional indebtedness. The condition must be such as to create the necessity. If a municipality is not indebted in any amount at all, or if it has the necessary funds in its treasury, no *additional* indebtedness can be incurred; nor can it be said that any necessity has arisen demanding it.''

It will be observed from the foregoing quotation that the basis of the conclusion is found in the language of the legislature in the exercise of the power conferred upon it under the constitutional provision. Emphasis is placed upon the adjective ''additional'' modifying the word ''indebtedness.'' No such adjective or qualifying word is found in the Constitution. Under a somewhat similar situation this court, in the case of *Lepley* v. *City of Fort Benton*, 51 Mont. 551, 154 Pac. 710, reached the same conclusion, basing it upon the decision in *Butler* v. *Andrus*, supra, and quoted extensively from the language of that opinion.

Counsel urge the applicability of the decision in *City of Bozeman* v. *Sweet, Causey, Foster & Co.*, 246 Fed. 370. There it was proposed by the city of Bozeman to issue bonds for the construction of a waterworks system. A special election was held. The city was indebted to the extent that it was necessary, in order to issue the bonds, that it come within the extended limit of the Constitution. The notice merely mentioned the question of issuance of bonds in a stated sum for waterworks purposes. No reference was made to any extension of the constitutional limit of indebtedness. The opinion of the court rested entirely upon the statute, subdivision 64 of section 5039, supra.

In the case of *Butler* v. *Andrus*, supra, this court in discussing the effect of the attempted allocation of a bond issue

entirely within the ten per cent. limit when there was an unused margin within the three per cent. limit sufficient for the issuance of the bonds, said: "The fact that the people, if such were the case, or the city council, arbitrarily voted that the bonds should be classed under the ten per cent. limit does not affect their validity as a liability of the city."

In the case of *Edwards* v. *City of Helena,* 58 Mont. 292, 191 Pac. 387, a taxpayer brought action to restrain the issuance of waterworks bonds. An election had been held to authorize their issuance, the question submitted being on the theory that the bonds to be issued would be within the extended limit under the Constitution. The action was brought on the theory that the city of Helena was not at that time sufficiently indebted, so that it could not issue the proposed bonds within the three per cent. limitation. This court there said: "It is the contention of appellant that the city could not lawfully authorize a bond issue beyond the three per cent. limit so long as there was a sufficient margin within that limit to secure the funds desired, and this will be conceded at once; but it does not follow that because the city council, either purposely or through inadvertence, declared that it was necessary to increase the indebtedness beyond the three per cent. limit, the bonds authorized by the favorable vote of the qualified electors are void. They are nevertheless the valid obligations of the city, unless the favorable vote was procured or influenced by the deception of the voters to their prejudice."

There is no contention here made that the favorable vote was procured or influenced by any deception of the voters to their prejudice. True, this court in the case of *Carlson* v. *City of Helena,* 39 Mont. 82, 102 Pac. 39, 17 Ann. Cas. 1233, in discussing the method of presenting the question for authority to exceed the three per cent. constitutional limitation to the voters, said: "The orderly course of procedure would be to submit the question generally whether the indebtedness not in excess of a definite amount within the limit should be incurred." But in the same opinion it was said: "The Constitution does not prescribe the mode by which the legislature may

authorize submission to the taxpayers of the question whether an indebtedness shall be incurred. The legislature, therefore, was free to prescribe such method as it chose." The Constitution leaves the determination of the necessity calling for the extension of the limit to the people who must pay the additional taxes required in order to discharge the debt to be incurred. (Id.)

Paraphrasing the proviso of our Constitution under consideration, we find it is said therein: "The legislative assembly may authorize municipal corporations to extend the limit mentioned in this section by submitting the question to a vote of the taxpayers." The only question which the Constitution commands to be submitted to the taxpayers is the extension of the limit of indebtedness. That identical question was submitted in this case.

We therefore conclude that the notice of election was sufficient under the Constitution and the curative Act.

Counsel for plaintiff urge that the majority of the votes cast ██ were against the incurring of an indebtedness in excess of the three per cent. limit. This astonishing contention is based on the argument that by adding the *no* votes on both questions, and counting them against the favorable vote on each single proposition submitted, the election was lost. If the *no* votes might properly be added, it would seem that the *yes* votes might likewise be added on the two propositions. As the questions were submitted, the individual voter could vote on each separate and distinct question, and for us to reach the conclusion suggested we would have to determine in some manner that all persons who voted *no* on the first question did not likewise vote *no* on the second. We find no basis for such a conclusion, and the contention is wholly without merit.

Plaintiff contends that the contract for the construction of the waterworks system is illegal, in that the city could not trade or exchange bonds for work done.

Cities are required to let contracts for work and supplies for ██ which there must be paid a sum exceeding $500, to the lowest responsible bidder. (Chap. 22, Laws of 1927.) Failure

to comply with this statute renders a contract void. (*Missoula St. Ry. Co.* v. *City of Missoula,* 47 Mont. 85, 130 Pac. 771.) Section 15, Chapter 160, Laws of 1931, provides with reference to the sale of bonds by cities: "The board is authorized to reject any and all bids and to sell the bonds at private sale if they deem it for the best interests of the city or town, provided such bonds shall not bear a greater rate of interest than six per cent. per annum and shall not be sold at less than par and accrued interest to date of delivery."

It is urged on behalf of plaintiff that the city of Deer Lodge was without authority to exchange bonds for the waterworks system. It is said that, since it is provided by section 19 of Chapter 160, that all money arising from the sale of bonds shall be paid to the city or town treasurer, the bonds can be sold only for cash. Counsel cite in support of their contention the cases of *Town of Buffalo* v. *Walker,* 126 Okl. 6, 257 Pac. 766, and *Bower* v. *City of Bainbridge,* 168 Ga. 616, 148 S. E. 517. In both of these cases statutes were under consideration which prohibited the sale of bonds for less than par. Bonds were exchanged for waterworks systems at a very substantial discount of the par value thereof, and therefore the contracts under consideration were condemned by the courts. Our attention is also invited to the case of *Iowa Service Co.* v. *City of Villisca,* 203 Iowa, 610, 213 N. W. 401. There the statute expressly limited the exchange of bonds to cases where it was sought to fund existing warrants or bonds, and it was accordingly held that bonds might not be exchanged for a waterworks system.

This court in *O'Neill* v. *Yellowstone Irr. Dist.,* 44 Mont. 492, 121 Pac. 283, had under consideration the validity of an exchange of irrigation district bonds, where the value of the property received was ninety per cent. of the par value of the bonds exchanged. The statute there under consideration with reference to the disposition of bonds, provided: "Bonds issued hereunder shall be issued, negotiated and sold by or under the direction of the board of commissioners, but shall never be sold for less than ninety per cent. of their par value and

accrued interest thereon to date of delivery. Any bonds issued hereunder may, in the discretion of the board of commissioners, be issued direct in payment and satisfaction of the contract or purchase price of any irrigation works, canals, water, water rights, or other property constructed or acquired by or for the district.'' It was there contended that, although the statute authorized the bonds to be sold at a discount or exchanged for property, it did not authorize the exchange of bonds at a discount. The court disposed of that contention in the following language: ''It is the general rule that, when a municipality is given authority to issue and sell its bonds, it must observe the restrictions, if any, as to the mode by which, and the terms upon which, they may be sold. But when the power is granted without restriction, the authorities of the municipalities are left free to dispose of them at such prices as they can obtain. They have the implied power to agree upon the terms of sale. (*Lynchburg* v. *Slaughter,* 75 Va. 57.) No restriction is imposed by the statute upon the board in making exchange of bonds for property, other than that imposed upon them in making a sale for cash. In *Cady* v. *City of Watertown,* 18 Wis. 328, one of the questions was whether bonds of the city delivered by the commissioners named in the Act clothing them 'with full power to negotiate the sale' in exchange for schoolhouse sites and for labor and material for the erection of a bridge, was a sale of such bonds within the meaning of the Act. The court said: 'We have no doubt that the disposition made of the bonds by the commissioners was a sale of them within the meaning and intent of the Act, and was a proper execution of the power.' So we think that an exchange of the bonds of the district for the property of the company at its cash value was a sale of them, the same as if they had been sold for cash, and that the commissioners were authorized to so sell them, subject only to the limitations to be observed in making sales for cash.''

It has frequently been held, under statutes authorizing the sale of bonds by boards at private sale, that a contract whereby bonds, at their face value, are exchanged for work at an agreed

valuation, and the price of the construction work is determined by a bid which is accepted, is a sale within the meaning of statutes similar to our own. (*Washington-Oregon Corp.* v. *Chehalis*, 76 Wash. 442, 136 Pac. 681; *Cady* v. *City of Watertown*, supra; *Montclair* v. *Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431; McQuillin on Municipal Corporations, 2d ed., sec. 2462.)

It is further urged that, since by advertising for bids and stating therein that the successful bidder would be paid for his services in bonds, bidders would be restricted either to those who had funds of their own, or to those who would be forced to sell the bonds at a discount, the price bid for the work to be done would be higher than if it had been advertised that the contract price would be paid in cash; and the statute requiring contracts of this character to be let to the lowest bidder is violated; consequently, the contract is void.

The trial court made the following findings of fact: "The court finds that there is no evidence showing that anyone was deterred from bidding on the contract for the construction of said water system by reason of the condition in the notice to bidders that contractor will be paid with six per cent. bonds of the city water bond issue, or that any person would have bid without such condition who did not bid as a result of said notice to contractors. That there is no evidence to show that the bids received from the contractors were any higher by reason of the insertion of such condition in said notice than such bids would have been without it." It is not contended that the court did not correctly find the facts as quoted, from the evidence produced on the trial.

Counsel in support of their contention cite the case of *Ledwith* v. *City of Lincoln*, 110 Neb. 425, 193 N. W. 763. A statement is found in the opinion of that case supporting the contention, but the Nebraska court had before it the question of the sufficiency of the complaint, to which a demurrer had been sustained and from which an appeal had been perfected. Statements of fact appeared in the complaint in accord with the contention here made; and the court very properly held

that, if such facts were true, the complaint stated a cause of action entitling the plaintiff taxpayer to enjoin the exchange of the bonds. But the facts alleged in the complaint in the Nebraska case are wholly at variance with the facts found by the trial court here. If the fact had been found or the proof had disclosed that by this notice the bids were made at a figure in excess of what they would have been had the medium of payment been specified in cash, then clearly the contention of plaintiff would be sound. But this court cannot by judicial notice find the facts in accordance with plaintiff's contention. Such facts are not classified among those enumerated in section 10532, Revised Codes 1921, which may not be extended by judicial construction. (*Masich* v. *American Smelting & Ref. Co.*, 44 Mont. 36, 118 Pac. 764.)

Plaintiff asserts that because the bids were made on the ▮ basis of the notice, namely, that the contract price was payable in bonds, the city was without power to enter into a contract for the payment of the contract price in cash, and therefore the contract is void. Under the contract the contractor was to receive "the lump sum of $137,850" as full compensation for its performance; that payment in cash should be made was not mentioned.

Municipal authorities may not enter into a contract with the lowest bidder containing substantial provisions beneficial to him not included in or contemplated by the terms and specifications upon which the bids were invited. (19 R. C. L. 1071; *Lissiter & Co.* v. *Taylor*, 99 Fla. 819, 128 So. 14, 69 A. L. R. 689, and note.) Many authorities are cited by plaintiff in its briefs in accord with the foregoing statement, wherein contracts were condemned by reason of the departure from the notice or specifications in some particular which was substantially favorable to the bidder. It is not here shown by evidence that the bonds were of any less value than the consideration provided in the contract. In the absence of a showing that the bonds of a par value of the amount of the bid were of any less value than the equivalent amount of cash, we are unable to say that there was such a departure from the notice as to warrant us in condemning the contract.

Plaintiff asserts that the city not having sold the bonds, the contract for the construction of the waterworks system creates an illegal indebtedness in excess of the three per cent. limit. As stated by its counsel in their brief, this statement presupposes that no authority had been given the city by virtue of the election to increase its indebtedness beyond the three per cent. limitation, and in view of what we have already said, such position is not tenable. The argument, however, in support of this contention of plaintiff proceeds upon the theory that until the bonds were sold and the proceeds in the treasury, no indebtedness could be created for the construction of the waterworks system. In support of this contention reliance is placed on the case of *Hansard* v. *Green*, 54 Wash. 161, 103 Pac. 40, 132 Am. St. Rep. 1107, 24 L. R. A. (n. s.) 1273. A statement appears in that opinion tending to support the contention, but it appears that the question there before the court was whether a city could make a contract for the delivery of bonds for a waterworks system prior to the securing of the necessary authorization to issue the bonds. It was there held that this could not be done, which was the only point decided in the case, as was pointed out by the decision of the Washington court in the later case of *Washington-Oregon Corp.* v. *Chehalis,* supra. Here the contract for the construction of the waterworks system was entered into subsequent to the election authorizing the incurring of the indebtedness. Therefore the facts are not in anywise similar to the Washington case in this all-important particular.

Lastly it is urged that the contract was invalid, in that it was entered into during the pendency of the preliminary injunction, which, it is said, has never been set aside either on appeal or otherwise; and it is argued that it is therefore still in force. The preliminary injunction in question prohibited the city from entering into a contract for the construction of the waterworks system whereby bonds were to be delivered in exchange for the work to be done. This injunction was in force at the time the contract in question was executed. Mr. Leigland, one of the members of the firm which

entered into the contract, testified that they understood at the time the contract was entered into, that the injunction had been quashed so far as the signing of this contract was concerned. No mention is made in the final judgment of the preliminary injunction.

A preliminary injunction comes to an end by the entry of the final decree in the cause making no provision for an injunction, and no formal order of dissolution is necessary to the validity and effectiveness of the decree. (32 C. J. 408; *Sweeney* v. *Hanley*, 126 Fed. 97, 61 C. C. A. 153; *Gardner* v. *Gardner*, 87 N. Y. 14.) It is usually held that transfers of property made to third persons having no notice of an injunction order and acting in good faith as innocent purchasers for value, although made in violation of a restraining order, are not void or voidable because made in disregard of such order. (14 R. C. L. 472.)

The preliminary injunction or restraining order upon the entry of the final decree dismissing this case was dissolved. The validity of the contract in question was not affected by the existence of the temporary injunction.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied February 26, 1934.

MR. JUSTICE ANGSTMAN: On motion for rehearing I have given further consideration to this case and believe the above opinion is erroneous in some particulars. I think that opinion is in error in holding that the case of *Butler* v. *Andrus*, 35 Mont. 575, 90 Pac. 785, was based upon the statute, now section 5039, subdivision 64, Revised Codes 1921. It is true that the statute and the particular language used in it was referred to, but the real basis for the opinion is section 6, Article XIII, of the Constitution. That section of the Constitution in substance authorizes the legislature to extend the limit of indebtedness by submitting the question to the taxpayers ''when such increase is necessary to construct a sewerage system or

to procure a supply of water.'' The statute considered in the *Butler Case,* it is true, referred to ''additional indebtedness,'' but the basis of the decision is the necessity that must be shown under the Constitution before the debt limit may be extended.

The court in speaking of the legislative Act in the *Butler Case* said: ''It is apparent that in enacting this provision the legislature intended to pursue strictly the provisions of the Constitution quoted.'' It also said: ''The proviso under which the legislature may authorize an extension of the limit is also clear in purpose, to-wit, to allow an extension of this limit when such extension (increase) is necessary to construct a sewerage system or procure a water supply. It cannot be granted or be made available for any other purpose nor under any other circumstances than those which create the necessity for it.'' The court then proceeded to point out in effect that the legislature carried out the authority conferred by the Constitution, i. e., that the legislature recognized there must be a necessity for extending the limit before it may be done. The same is true of the case of *Lepley* v. *City of Fort Benton,* 51 Mont. 551, 154 Pac. 710. Hence it is my view that the curative Act, Chapter 17, Laws of 1933, has no application if, in submitting the question to the taxpayers, there was a failure to comply with the foregoing cited cases interpreting the constitutional provision.

I think the correct conclusion was arrived at in the opinion written by Mr. Justice Anderson, because the Constitution does not prescribe the manner in which the question of extending the debt limit shall be submitted. The manner in which it was submitted here, and the favorable vote on the question as submitted, was tantamount to securing consent of the taxpayers that the limit be extended for the full amount of $200,000. If a part of the $200,000 comes within the three per cent. limit, rather than the extended limit, no taxpayer could complain, nor would the validity of the bonds be affected. (*Butler* v. *Andrus,* supra.)

I agree, therefore, with the result reached in the foregoing opinion.