THE STATE OF NEBRASKA, EX REL. JOHN OTTO, V. SCHOOL DISTRICT NO. 4, SHERMAN COUNTY.

1.  School District Bonds. Under the provisions of sections 30, 31, and 32 of the act entitled " An act to establish a system of public instruction for the state of Nebraska," approved Feb. 15, 1869, and constituting chapter 68 of the General Statutes, a school district is not empowered to issue bonds to be bargained away and delivered to a contractor for the erection and furnishing of a school house for such district.

2.  ——: RECITAL IN BONDS DO NOT OPERATE AS ESTOPPEL. The recitals on the face of the bonds, set out at length in the opinion, are not such as to estop the school district to defend against said bonds in the hands of an innocent purchaser thereof, for value, before maturity, without other notice, etc.

ORIGINAL application for mandamus.

*Bartlett, Peckham & Cornish,* for relator, cited: Burroughs on Public Securities, 300–308. 2 Daniels Neg. Instr., 537–570. *Knox v. Aspinwall,* 21 How., 539.

*Town of Coloma v. Eaves,* 92 U. S., 484. *Humboldt Town-ship v. Long,* 92 Id., 642. *Third National Bank v. Seneca Falls,* 15 Reporter, 779. *State, ex rel. Kimball, v. School District,* 13 Neb., 82. 2 Dillon Mun. Corp., 511. *State v. Van Horne,* 7 Ohio State, 331. *State, ex rel. Gregory, v. School District,* 13 Neb., 78. *State, ex rel. Hopper, v. School District,* 13 Neb., 466.

*Marquett, Deweese & Hall,* for respondent, cited: . Bur-roughs on Public Securities, 329, 331. *Adams v. State,* 82 Ill., 132. *Scipio v. Wright,* 101 U. S., 665. *Harsh-man v. Bates County,* 92 U. S., 569. *McClure v. Town-ship of Oxford,* 94 Id., 429. *Lewis v. Commissioners,* 1 McCrary, 377.

Cobb, Ch. J.

This is an original action in this court in the nature of a relation for a peremptory mandamus to issue against the board of the defendant, commanding them to make a re-port in writing of the amount of certain bonded indebted-ness in the petition mentioned and described, and of the amount of tax necessary to pay the same to the county clerk of said county or to the commissioners thereof, and that the said county commissioners be commanded to levy a sufficient tax to pay said indebtedness upon the taxable property of said school district number four as constituted at the time said bonds were issued to pay said indebted-ness, and that the treasurer of said county collect said tax and retain the same as a special fund, and pay the same as collected in sums of one hundred dollars to the clerk of this court, to be by him applied on the indebtedness afore-said.

From an examination of the record it appears that the indebtedness meant and referred to above consists of six bonds for five hundred dollars each, payable on the first day of January, 1880, with interest thereon at ten per cent

per annum, payable on the first day of January of each year from 1875 to 1880, both inclusive, and for which coupons were attached to said bonds and still remain attached thereto, both principal and interest to be paid at the banking house of Kountze Brothers, New York City, said bonds being dated February 11, 1874, numbered 1 to 6 inclusive, and signed by John S. Hawk, director; Milton Hyde, moderator; and Alfred Brown, treasurer, respectively of said district, and countersigned and attested by the signature and seal of E. S. Atkinson, county clerk of said Sherman county, etc.

An alternative writ of mandamus was issued and served on the said district, and returned with several defenses thereto, but one of which it is deemed important to consider in this opinion. It is in the following words: "Further answering said writ, the defendants say that no meeting was ever called for the legal voters of said district to vote upon any proposition to borrow money or to issue bonds for the purpose of borrowing money.    *    *    * That on the 28th day of January, 1874, three persons, to-wit, John L. Hawk as director, Milton Hyde as moderator, and Alfred Brown as treasurer, signed a bond of said district, and recited therein, "Shall district No. 4, county of Sherman, and state of Nebraska, issue bonds of said district in the sum of three thousand dollars to pay for a site for a school house, and to erect buildings thereon, and to furnish the same?" as the proposition on which the bonds were issued; and further, "which said proposition upon the 28th day of January, 1874, at a special meeting was decided in the affirmative by a majority of the electors of said school district present at said special meeting. In accordance therewith, the school district board of said district have entered the same upon their records, given due notice of the adoption of said proposition, and executed the bonds here issued." The defendants say that the facts are that said persons acting as said board fraudulently con-

spired with one John Harkness, and corruptly agreed with him to give him the three thousand dollars of bonds for the erection by him of a school house worth not to exceed five hundred dollars. That said bonds were issued fraudulently and for said purpose, and not for borrowing money.

That said bonds recite and show on their face that they were issued in exchange for a school house site and building thereon. * * * The form of the bonds is also set out as an exhibit to said return, and is admitted to be correct as follows:

"No. one.                                                    $500.00.
The United States of America.
County of Sherman, State of Nebraska.
Six years school bond.

It is hereby certified that school district No. 4, in the county of Sherman, and state of Nebraska, is indebted unto ..............., bearer, in the sum of $500.00, payable on the first day of January, 1880, with interest from the first day of January, 1874, inclusive, at ten per cent per annum, payable at the banking house of Kountze Bros. on the first day of January in each year, on presentation of the proper coupon hereto annexed. This bond is one of a series of six bonds of $500 each, numbered consecutively from one to six inclusive, and issued by said school district number four for the purpose of obtaining a site for and of erecting and furnishing a school house in said district. The entire debt limited by law not to exceed $5,-000.00. Authorized by secs. 30, 31, and 32 of an act "To establish a system of public instruction for the state of Nebraska," approved Feb. 15, 1869. In pursuance whereof, on the 8th day of January, 1874, the school district board of said district No. four, of the county of Sherman and state aforesaid, submitted to the electors of said district in manner prescribed by law the following proposition: "Shall school district number four, in the county of Sherman, and state of Nebraska, issue bonds of the district in

the sum of $3,000.00, to pay for a site for a school house and to erect buildings thereon, and to furnish the same?" Which said proposition, upon the 28th day of January, 1874, at a special meeting, was decided in the affirmative by a majority of the electors of said school district present at said special meeting. In accordance therewith the school distric. board of said district have entered the same upon their records, given due notice of the adoption of said proposition, and executed the bonds here issued.

In testimony whereof the said school district number four, of Sherman county and state aforesaid, has caused the names of the board of said school district to be subscribed hereto, and the same attested by the clerk of said county, and to be sealed with the seal of said county this 11th day of February, 1874.

JOHN L. HAWK, Director,  
MILTON HYDE, Moderator,  } District Board.  
ALFRED BROWN, Treasurer.  

E. S. ATKINSON, County Clerk."

County seal, etc., with certificate of registration duly signed by the county clerk.

The provisions of law under which the said bonds were issued, as shown on the face thereof, are as follows:

"Sec. 30. Any school district shall have power and authority to borrow money to pay for the sites for school houses, and to erect buildings thereon and to furnish the same, by a vote of a majority of the qualified voters of said district present at any annual meeting or special meeting. *Provided,* That a special meeting for such purpose shall be upon a notice given by the director of such district at least twenty days prior to the day of such meeting, and that the whole debt of any such district at any one time for money thus borrowed shall not exceed five thousand dollars.

"Sec. 31. Any school district may at any annual or special meeting impose a tax on the taxable property of the

district in any amount not exceeding ten mills on the dollar on the assessed valuation of the property of the district, for the purpose of building a school house, and such tax, when voted, shall be reported by the district board to the county clerk, and levied and collected in the same manner as other taxes voted by the district.

"Sec. 32. The qualified voters, when assembled at any annual or special meeting, may, from time to time, impose such tax as may be necessary to pay teachers, to keep their school house in repair, and to provide the necessary appendages, and to pay and discharge any debts or liabilities of the district lawfully incurred; may raise a sum sufficient for the purchase of books of reference, globes, maps, or any apparatus for the purpose of illustrating the principles of astronomy, natural philosophy, natural history, and agricultural chemistry, or the mechanic arts." Gen. Stat., Chap. 68.

It is agreed between the parties by stipulations "that the said John Otto purchased the bonds and coupons mentioned in the petition of the relator herein on the market in the city of New York in the due course of business before maturity and paid a valuable consideration therefor: the sum of ninety-five cents on the dollar," etc.

The case was referred to a referee "to report all questions of fact upon the evidence produced to him in the cause," etc., who among other things reported "that the school board instructed its treasurer to negotiate the sale of these bonds in the market, and they were given to one Harkness in payment of the erection of a school house in said district of the value of about $1,500, and furnishing the same in pursuance of a bid offered by said Harkness, among others, to erect and furnish a school house for $3,000 in bonds of the district," etc.

There are but two questions which it is deemed necessary to discuss in support of the conclusion to which we have arrived in this case:

1.   Had the school district the power to issue bonds to be delivered to a contractor in payment for a school house? and,

2.   Are the recitals on the face of said bonds sufficient to estop the school district to deny the legality of said bonds in the hands of an innocent *bona fide* purchaser before maturity such as the relator is stipulated to be?

In the case of *The State, ex rel. Kimball, v. School District No. 4*, 13 Neb., 82, this court held that "the power given to school districts by section 30 of the act of 1869 to borrow money, necessarily carries with it the authority to determine the time of payment and to issue bonds or other evidences of indebtedness therefor." We adhere to this opinion, and without the least intention to disturb it we revert to the fact that the statute above quoted does not, in terms, confer upon the school district the power to issue bonds. Yet that such power is conferred as one of the methods of borrowing money, the power to do which is expressly conferred by the statute. In other words, the power to issue bonds is only conferred by implication. It logically follows that the power thus conferred can only be exercised as a means of accomplishing the borrowing of money and not independent of that purpose.

The case of *Gould v. The Town of Sterling*, 23 N. Y., 456, arose under a statute of the state of New York, "which provided that it should be lawful for the supervisor of any town of Cayuga county, and the assessors of said town, who were appointed commissioners to act, in conjunction with the said supervisor, in effecting and executing the purposes of the act, to borrow, on the faith and credit of such town, such sum of money as they might deem necessary, not exceeding $25,000, for a term not exceeding twenty years, at a rate of interest not exceeding seven per cent per annum, payable annually or semi-annually, and to execute therefor, under their official signatures, a bond or bonds for the payment of the principal and in-

terest of such loan, in such sums and at such times and places as should be agreed upon and expressed in the bonds to be executed under the authority of the act. All the money borrowed under the act was to be paid over to the president and directors of such railroad company, then or thereafter to be organized, under the general railroad law, as might be expressed by the written assent of two-thirds of the resident tax-payers of the town; to be expended by such railroad company in grading, constructing, and maintaining a railroad or railroads passing through the city of Auburn and connecting Lake Ontario with the Susquehanna and Cayuga railroad, or the New York and Erie railroad," etc. The second section of the act provided " that it should be lawful for the supervisor and commissioners, on obtaining and filing the assent, as provided in the first section, to subscribe for and take, in the name of and for such town, such a number of the shares of the capital stock of such railroad company as would be equal to the amount of bonds executed under the authority of the act; or instead of borrowing such money and issuing such bonds, with the like assent of two-thirds of such tax-payers, to raise the amount of its subscription by tax upon the taxable property of such town, to be levied and collected by the supervisors of the said county in the manner specified in the act, and in such sums as they might determine and direct."

It seems that there was also a special act of the legislature specially applicable to the town of Sterling, but containing the same provisions as to the power to borrow money, issue bonds, and subscribe for stock, as those contained in the general law above quoted. It seems also that instead of borrowing money on the bonds and paying it over to the railroad company for stock, the supervisor and commissioners delivered over the bonds to the company in payment for stock, for which they were authorized by the act to subscribe, and the company sold them at a discount.

The action was brought for interest accrued on these bonds, by a holder, for value, etc. Judge Selden, in the opinion of the court, says: "The question is, whether this is within the authority conferred by the act. It is clearly not within its language. No money was borrowed, and nothing else was authorized by the terms of the act. If, however, what was done was the same, in effect, as if the money had been borrowed and paid over to the railroad company, the difference in form would not be material. But it is plain that neither in respect to the railroad company nor the town was its effect the same. If the statute had been pursued the company would have had a sum equal to the par value of the bonds to expend upon their road. As it was, they were compelled to sell the bonds at a discount in order to realize the money. If they could sell at a discount at all, they could of course sell at any sacrifice, however great. The bonds of the town of Sterling for $25,000 might have been sold for $10,000. Can it be supposed that if such a power had been specifically asked of the legislature, the request would have been granted? Would the town have been permitted to raise by taxation upon its inhabitants $25,000 for the sake of furnishing the railroad company $10,000 to expend upon its works? I think not; and yet this is, in effect, the power which it is claimed was conferred by the act authorizing the town to borrow. The rate of discount, whether more or less, can make no difference with the principle."

This case is cited with approval and followed by the supreme court of the United States in the case of *Scipio v. Wright*, 101 U. S., 665.

The argument and illustrations of the above opinion are altogether applicable to the case at bar. It cannot be conceived that legislative authority could ever have been obtained by which said school district could issue its bonds for three thousand dollars, bearing interest at ten per cent per annum from a date prior to their issue, to be exchanged

for a school house, which, by the greatest stretch of liberality cannot be and has not been valued at a sum exceeding fifteen hundred dollars. Certainly no such authority ever was obtained expressly, nor do I think that it arises upon any fair construction of the statute authorizing such school districts to borrow money. The objection to such a construction is not technical, but is demanded by considerations of public safety. When money is actually borrowed and received into the school district treasury, the contract for the erection of a school house, etc., may always be let at a reasonable cash price, after a fair competition among the contractors and builders of the vicinity; but when there is no money in the treasury, and the building is to be paid for in bonds, then the competition is confined to those persons of the neighborhood who combine the character of contractor and builder with that of capitalist or stock broker, and so in the latter case it is not only improbable but well nigh impossible that the same quality of building could be procured as economically as in the former.

Many other reasons could be added to the above, but it is deemed unnecessary, as I conceive the law to be very plain that when a school district desires to secure a school house and has not the money in the treasury to pay for it, it may pursue one of two courses only—1st, raise the money by taxation, or, 2d, borrow it. But the district has not the power to issue bonds to be bargained off for the erection of a school house.

On the second point it must be conceded under the authorities, that if it were expressed and recited on the face of the said bonds that they were issued by the said district for the purpose of borrowing money to build a school house, etc., then it being stipulated that the bonds were purchased by the relator on the market before maturity in the usual course of business, and that he paid a valuable consideration therefor, and there being no evidence of ac-

tual notice to the relator that the said bonds were either issued for or applied to any other purpose, nor notice of any such fact sufficient to put him upon his inquiry thereof the relator could recover thereon; and the fact that the bonds were issued for or diverted to another and different purpose by the district board would be unavailing as a defense.

But that is not this case. These bonds do not recite on their face that they were given for any purpose authorized by law. The rule above conceded is a hard one on tax payers, and one to which the writer would not agree were it an open question, and it ought not to be enlarged or extended. On the contrary, these bonds carried on their face, when read in connection with the law, notice that they were issued for a wholly unauthorized purpose.

These views necessarily lead to the conclusion that a peremptory writ of mandamus to compel the payment of those bonds must be denied. By the court,

WRIT DENIED.