[No. 12641.  Department Two.  April 5, 1915.]

ALBERT SCHOOLEY, *Appellant,* v. THE CITY OF CHEHALIS
et al., *Respondents.*[1]

MUNICIPAL CORPORATIONS—INDEBTEDNESS—LIMIT—WATER SYSTEM.
Art. 8, § 6, of the state constitution prohibiting municipal indebtedness in excess of five per cent of the taxable property, excepting that, in case of municipally owned water, light and sewer systems, it may incur an additional five per cent indebtedness, with the assent of three-fifths of the voters, does not contemplate that the excess of indebtedness for general purposes, which is void under the constitution, should be taken into account as a limitation on the indebtedness for a water system, since the constitution expressly authorizes indebtedness to the extent of five per cent of the assessed valuation for the purpose of purchasing, owning, and controlling such utilities as water systems.

MUNICIPAL CORPORATIONS—BONDS—ISSUANCE—SUBMISSION TO VOTERS—RATE OF INTEREST.  A proposition for a bond issue by a city submitted to the voters thereof, in which the bond interest was stated as "at a rate not exceeding six per cent per annum," following the language of Rem. & Bal. Code, § 8007, is sufficient without fixing a definite rate of interest, as such bonds are the subject of competitive bids in the open market and it is common practice for a bidder to state the rate of interest which he is willing to accept.

MUNICIPAL CORPORATIONS—ORDINANCES—REPEAL OF AMENDING ORDINANCE.  An ordinance which expressly re-enacts in amended form a section of an original ordinance which had been amended, and then repeals the former amendatory ordinance, does not thereby repeal the original section with the elimination of the amendatory ordinance.

MUNICIPAL CORPORATIONS—BONDS—PROPOSITION—USE OF PROCEEDS.
A proposition for the issuance of bonds for the purchase and maintenance of a water system is not illegal as contemplating the use of the proceeds of the bonds for maintenance purposes, in violation of the provision of Rem. & Bal. Code, § 8008, which provides that the maintenance of such a system shall be paid out of the revenues of the plant, since it will not be presumed that the city will do an illegal act, or that it will not perform its duty by fixing rates so as to maintain the plant from its revenues.

MUNICIPAL CORPORATIONS—INDEBTEDNESS—LIMIT.  A contract by a city to purchase a private water system as part of a municipal

[1] Reported in 147 Pac. 410.

plant does not create a general indebtedness, when the contract expressly provides that the cost shall not be a general obligation of the city, but shall be made a charge upon the revenues of the water system, and payable in semiannual installments.

MUNICIPAL CORPORATIONS — BONDS — PROPOSITION — MATURITY.   A proposition for the issuance of bonds payable in twenty years, with an option to make payment at any time after ten years, is not open to the objection that the date of maturity is indefinite.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered January 18, 1915, upon sustaining a demurrer to the complaint, in an action to enjoin the issuance of bonds for a public improvement, after a trial to the court.   Affirmed.

*Peters & Powell*, for appellant.

*W. A. Reynolds*, for respondents.

CROW, J.—Action by Albert Schooley, a taxpayer, against the city of Chehalis, a municipal corporation, and its officers, to restrain the issuance of bonds of the par value of $185,000.   A demurrer was sustained to the complaint, and the plaintiff, refusing to plead further, appeals from an order of dismissal.

The bonds which are the subject-matter of this litigation are the same bonds and involve the same proceedings which were considered by this court in *Washington-Oregon Corporation v. Chehalis*, 76 Wash. 442, 136 Pac. 681.   On March 25, 1912, the city enacted ordinance 14A, submitting to the voters a proposition to acquire, own, and operate a system of water works at an estimated cost of $185,000. For this purpose the ordinance proposed an issue of bonds, $70,000 thereof to constitute a part of the general indebtedness of the city, and $115,000 thereof to be special fund bonds payable solely out of the gross revenues of the system.   The ordinance further provided for the creation of two special funds to be known as (a) the Newaukum River Gravity Water System of Chehalis fund, and (b) the Newaukum River Gravity Water System of Chehalis Bond

fund; that into fund (a) all proceeds of the bonds, when sold, and the entire revenues of the new water system were to be paid, together with such other funds as the city might see fit to transfer thereto; that from fund (a) should be paid the entire cost of acquiring, constructing, and maintaining the water system; that there should be set aside from fund (a) into fund (b), at specified times, sums sufficient to pay annual interest on the special fund bonds and also the principal of such bonds as they matured; that fund (b) should be used solely for the purpose of paying the principal and interest of the bonds issued against the water system, and that such bonds should be a first and direct lien on the entire gross revenues of the water system. The ordinance further provided that the city should not sell, lease, or in any other manner dispose of the water system, until all bonds issued against its revenues should be paid.

The complaint, after alleging the above facts, shows that the election was regularly held; that the bonds were voted by the required number of electors, and in paragraph 5, in substance, further alleges, that on the 21st day of April, 1913, ordinance 39A was passed, which amended § 8 of the original ordinance 14A of March 25, 1912, in the following particulars: (1) That the original ordinance contained the following language: "and from the said Newaukum River Gravity System of Chehalis fund shall be paid the entire cost and expense of acquiring, constructing, and maintaining said Newaukum River Gravity Water System as specified and set forth in this ordinance and additions thereto, including all lands and the condemnation thereof, *together with the special bonds issued upon and against said fund, and the interest thereon;*" that in the amended ordinance the italicized language above mentioned is omitted. (2) That the other amendments and additions to that portion of § 8 are as follows, the amendatory language being italicized:

"There shall be set aside from the Newaukum River Gravity Water System of Chehalis Fund into the Newaukum

River Gravity Water System of Chehalis Bond Fund on the 20th day of each and every month after the issuance of such bonds *of and from the gross revenues of said Newaukum River Gravity Water System* a sum equal to one-sixth of the interest on the entire bond issue which sum so set apart shall be used for the purpose of paying the semi-annual interest as provided for in this ordinance. Provided, however, that after the year in which the first part of the principal is paid as provided for in this ordinance then only so much interest shall be set apart on the 20th day of each and every month as shall be necessary to be paid on the remaining principal, the amount of interest to be so set apart to be likewise reduced upon each payment of principal as provided for in this ordinance. There shall also be set apart from the said 'Newaukum River Gravity Water System of Chehalis Fund' into the 'Newaukum River Gravity Water System of Chehalis Bond Fund' on the 20th day of each and every month after the issuance of such bonds for a period of five years in addition to the amounts last above specified to be set apart for interest, a sum equal to one-sixtieth part of the bonds which will mature at the end of the first five year period, such sum so set apart *into a said bond fund solely from the gross revenues of the municipal water system herein created* to be used for the purpose of taking up and cancelling such maturing bonds. And on the 20th day of each and every month thereafter there shall be set apart from the said 'Newaukum River Gravity Water System of Chehalis fund' into the 'Newaukum River Gravity Water System of Chehalis Bond Fund' *solely from the gross revenues of the municipal water system herein created* a sum equal to one-twelfth of the amount of principal and interest of so much of such bonds as shall mature in each and every year after the first five year period as provided for in this ordinance until all of such bonds and interest shall be paid. *Provided, however, that the interest and principal of the $115,000.00 special water fund bonds shall be paid first, as the same mature, out of the funds provided to be set aside into said bond fund from the gross revenues of said water plant.*"

The complaint further alleges that thereafter, on the 20th day of July, 1914, the city passed ordinance No. 98A, which was entitled: "An ordinance to amend section 1 of ordinance

No. 39A, amending section 8 of ordinance No. 14A, entitled
. . . passed and approved the 21st day of April, 1913,
and to repeal ordinance No. 39A;" that § 1 of ordinance No.
98A in substance provides as follows:

"That section 1 of Ordinance No. 39A entitled as afore-
said, amending section 8 of Ordinance No. 14A, passed and
approved the 25th day of March, 1912, as amended by Sec-
tion 1 of said Ordinance No. 39A, be amended to read as
follows: Section 8: [Here is inserted the language of sec-
tion 8 which appears in the original ordinance No. 14A
with a few verbal changes not affecting the sense except that
the following changes in sense occur: Section 8 as set out in
ordinance 98A provides that the coupons of the water system
bonds shall be signed by the lithographed signatures of the
mayor and clerk. Section 8 in the original ordinance No.
14A provided that there shall be set aside from the Newau-
kum River Gravity Water System of Chehalis Bond Fund on
the 20th day of each and every month a sum equal to one-
sixth of the interest on the entire bond issue. The language
of section 8 as it is reenacted in Ordinance No. 98A provides
that the moneys so to be set aside from the Newaukum River
Gravity Water System of Chehalis Fund into the bond fund
shall be taken 'from the gross revenues of such water sys-
tem;']"

and that § 2 of ordinance 98A reads as follows:

"That Ordinance No. 39A, passed and approved the 31st
day of April, 1913, be and the same is hereby repealed."

The complaint further alleges, that the respondents are
about to issue the bonds in compliance with said ordinances;
that at the time when the city election was held, the total
taxable property of the city, according to the last previous
assessment, was valued at $1,507,595 and no more; that the
net outstanding general indebtedness was then $73,293.49;
that at the time of the commencement of this action the total
taxable property of the city, according to the last assessment
previous thereto, was valued at $1,572,000 and no more, and
that the net outstanding general indebtedness was then $82,-

845.60. The complaint further shows that on or about June 29, 1914, the respondent city entered into a written contract with H. C. Coffman and T. C. Rush, for the purchase of certain lands, property and franchises which comprised an existing water system then in use in the city, for the consideration of $30,000, $11,000 to be paid in Newaukum River Gravity Water System bonds, and the remainder of $19,000 to be paid at the rate of $1,000 every six months in cash without interest, or in water system bonds, as the city might elect, such payments to be made from the revenues of the water system; that on January 7, 1914, the defendant city entered into a contract with one W. H. Mitchell for the construction of a pipe line, reservoir, and distributing system, it being agreed that he should accept as pay therefor the $70,000 of general bonds to be issued under ordinance No. 14A, and such proportion of the $115,000 of special bonds to be issued under ordinance No. 14A as might be necessary to fully pay his contract price; that he completed his contract at the agreed cost of $170,534.92, and that the city is now about to execute and deliver to him the above mentioned general bonds to the amount of $70,000, and special water fund bonds above mentioned in the sum of $100,534.92.

Appellant's first contention is that the issuance of $70,-000 of the general bonds will cause the city indebtedness to exceed the constitutional limit, and that in determining whether such limit is exceeded, the financial condition at the date of the issuance of the bonds, and not at the date when they were authorized by a vote of the people, must be considered. It must be remembered that these bonds are to be issued to purchase a water system to be owned and controlled by the city. The complaint shows the indebtedness of the city to have been greater at the time of the filing of the complaint when the bonds were about to be issued than at the date upon which they were voted by the people.

Without deciding the question which shall be controlling, we will consider the indebtedness of the latter date, it being the larger. The value of taxable property was then $1,572,-000, and the complaint shows that the net total of the general bond and warrant indebtedness was then $82,845.60, which would be $4,245.60 in excess of the five per cent limit allowed by the constitution of this state. There is no allegation that any of this existing indebtedness was contracted in purchasing any works for supplying water, light, or sewers to be owned by the municipality. Although § 6 of art. 8 of the constitution prohibits a municipal corporation from incurring a debt for general purposes in excess of five per cent of the taxable value of the property of the city, it provides that the city, with the assent of three-fifths of the voters therein voting, may become indebted to a larger amount, not exceeding five per cent additional, for supplying such city or town with water, artificial light, and sewers, when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality. The issuance of the contemplated $70,000 general fund bonds to purchase a water system does not exceed five per cent of the assessed value of the property of the city at the time the bonds were to be issued. It is a fact, however, that the $70,000 added to the existing general indebtedness would exceed ten per cent of such assessed valuation. But we cannot conclude that this fact would make the bonds now to be issued illegal or void. If the city, in violation of the constitutional inhibition, has heretofore incurred general indebtedness in excess of five per cent of its assessed valuation, such excess is invalid and void. The fact, however, that such excess of invalid and void general indebtedness has been incurred will not deprive the city of its right to issue bonds to the amount of five per cent of its assessed valuation for the purpose of purchasing a water system to be owned and controlled by it. In other words, it was the manifest intention of the framers

22—84 WASH.

of the constitution, and the people in its adoption, that a city should be authorized to incur an indebtedness to the extent of five per cent upon the assessed valuation of its property, for the purpose of purchasing, owning, and controlling such a system. The existing general indebtedness is an independent and separate matter, and if it has been incurred in excess of the constitutional limit, such excess indebtedness could not be enforced, neither could it be validated by a vote of the people. *Pilling v. Everett*, 67 Wash. 109, 120 Pac. 873; *Patterson v. Edmonds*, 72 Wash. 88, 129 Pac. 895.

Appellant's next contention is that the respondents are not authorized to issue the bonds either general or special, because the proposition submitted to the people did not specify the rate of interest which they should bear. The proposition in ordinance 14A was that both classes of bonds should bear interest "at a rate not exceeding six per cent per annum." This is the language of the statute. Rem. & Bal. Code, § 8007 (P. C. 77 § 1077). Appellant contends that it is insufficient as the rate should be definitely fixed by the ordinance. In support of this contention, appellant cites *Hansard v. Green*, 54 Wash. 161, 103 Pac. 40, 132 Am. St. 1107, 24 L. R. A. (N. S.) 1273, where this court said:

"There is another reason that would compel a reversal of this case in any event. The law provides that the system or plan proposed in the acquisition of a public improvement shall be submitted to the people for ratification or rejection. The ordinance before us goes no further than to recite the advisability of purchasing the existing water works system, and that 'said town become indebted and issue its bonds as provided by law in the sum of twenty-two thousand ($22,-000) dollars, for the purchase of such water works.' The plan or system is not set out. The time the bonds are to run, the rate of interest, the manner of payment, are all matters proper to be considered, and, without some mention thereof, the taxpayer cannot vote with that understanding contemplated by the statute. Payment is as much a part of the 'plan or system' as is the purchase, and a method should be provided in the ordinance. Otherwise the voter has ex-

pressed his opinion upon a part only of the object sought to be attained."

This statement, which was made in passing upon the city ordinance then under consideration, has no application to the ordinance now before us. We have examined the original record in *Hansard v. Green* and find that the only reference made to the proposed bonds was in the following language:

"Be it further ordained that said town [Harrington] become indebted and issue its bonds as provided by law in the sum of twenty-two thousand ($22,000) dollars, which is the cost of the system as near as the same may be estimated."

It thus appears that the Harrington ordinance utterly failed to meet the requirements of the statute, in that it made no reference whatever to any rate of interest, the time the bonds were to run, or the manner of payment. Municipal bonds are ordinarily the subject of competitive sale in the open market. It is common knowledge that such competition is generally made by the bidder stating the rate of interest, not exceeding that permitted by law or ordinance, at which he will purchase, and it seems to us that a statement that the rate of interest shall not exceed six per cent gives such an opportunity for competitive bidding as will enable the city to sell the bonds to the best advantage, and that it also meets the demands of the statute.

It is further contended that the city has not made any provision for creating a special fund from revenues of the water system with which to pay the special bonds for $115,000, as required by Rem. & Bal. Code, § 8008 (P. C. 77 § 1078). This contention seems to be based upon the proposition that ordinance 14A, which was passed March 25, 1912, was amended on April 21, 1913, by ordinance 39A as above stated; that thereafter, on July 20, 1914, the city passed ordinance 98A, by § 1 of which ordinance 39A was amended. Appellant calls attention to the fact that § 2 of 98A entirely repeals ordinance 39A, and argues that the net result of this procedure was to entirely eliminate § 8 of

original ordinance 14A so that it no longer exists either in its original form or as amended, and that as § 8 made the only provision for creating the special fund, the repeal destroys such provision so that it no longer exists. In support of this contention appellant, citing *People v. Wilmarding*, 136 N. Y. 363, 32 N. E. 1099; *People v. Supervisors*, 67 N. Y. 109, 23 Am. Rep. 94; and *Goodno v. Oshkosh*, 31 Wis. 127, insists that ordinance 98A did not, by repealing ordinance 39A, reinstate original section 8 of ordinance 14A. The cases cited announce the doctrine that, where a statute or a section has been amended by a subsequent act, such subsequent act supersedes and impliedly repeals the original section or act thus amended, and that if the amendatory act be thereafter repealed, such repeal does not revive the original act. It is apparent that the cases cited have no application, as the last amendatory ordinance now under consideration expressly reenacted § 8 in an amended form. Section 8 as thus amended is in full force and makes provision for the creation of the fund.

Appellant further contends that the proposition submitted by ordinance 14A was unauthorized and illegal, for the reason that it authorized the issuance of bonds a part of the proceeds of which should be used for the purpose of maintaining the water system. We find no merit in this contention. The fund (a) created by the ordinance was to be used to purchase and maintain a water system, but it will be observed that the gross receipts from the system were to be paid into that fund and, as suggested by this court in *Washington-Oregon Corporation v. Chehalis, supra*, it would not be assumed that the municipal authorities will at some time in the future do an illegal act by maintaining the system out of the proceeds of the bonds authorized to be sold under the system. We also said:

"Nor is there, so far as we can observe, any difficulty in determining the amount of money in the first fund derived from the revenues of the plant that should be segregated

from this fund and transferred to the second fund. The first fund is merely a collection fund. It will not be a difficult matter to segregate the money that should be transferred into the second fund; and when so segregated and transferred, a fund is created out of which the special bonds are payable as provided by law. We, therefore, cannot concur in the conclusion of the court below that the portion of the ordinance creating this second fund is invalid."

Rem. & Bal. Code, § 8008 (P. C. 77 § 1078), provides that the maintenance of the system shall be paid out of the revenues of the plant. In the event that the rates established are not sufficient to maintain the plant and pay the interest and principal of the bonds, as the same mature, the city is bound to raise the rates until the revenues will be sufficient to maintain the system and also take care of the maturing principal and interest of the bonds. We will not presume that the city will not perform this duty by fixing such rates as will enable it to maintain the plant from the revenues of the system itself, and also pay the principal and interest of the bonds as provided by the ordinance.

Appellant further contends that the money which the city has contracted to pay to Coffman and Rush for the purchase of the old water system is an indebtedness of the city, and that, when the same is considered in connection with the existing indebtedness, it will exceed the constitutional limit. The contract between Coffman and Rush and the city, which is set forth in the complaint, provides that the $19,000 shall not be a general obligation or debt of the city, but that it shall be made a charge upon the revenues of the water system, and shall be paid in installments of $1,000 every six months without interest. In view of this provision, the obligation thus incurred is not a general indebtedness of the city. *Winston v. Spokane,* 12 Wash. 524, 41 Pac. 888; *Faulkner v. Seattle,* 19 Wash. 320, 53 Pac. 365; *Dean v. Walla Walla,* 48 Wash. 75, 92 Pac. 895.

Some argument is made to the effect that the date of the maturity of the $70,000 of general bonds is indefinite. We

find no merit in this contention. Without stating in detail the provisions of the ordinance, we state our conclusion that the bonds are payable in twenty years with an option to make payment at any time after the expiration of ten years. This is sufficient.

Other contentions of less importance have been made in the brief, of which the length of this opinion forbids a review. We will say, however, that after careful consideration we find them to be without merit. The complaint does not state a cause of action. The demurrer was properly sustained, and the judgment is affirmed.

MORRIS, C. J., FULLERTON, ELLIS, and MAIN, JJ., concur.