Ledwith v. City of Lincoln.

---

JOHN J. LEDWITH, APPELLANT, V. CITY OF LINCOLN ET AL.,
APPELLEES.

FILED MAY 26, 1923.  No. 22387.

1. **Municipal Corporations**: CONTRACTS: PAYMENT WITH BONDS.
   Where there is no provision in a city charter requiring the munic-
   ipal authorities to sell bonds to the highest bidder after a proper
   and legal notice, said municipal authorities, when authorized to
   issue and sell bonds to pay for a public improvement, may, the
   contractor consenting, deliver the bonds at par in payment of the
   contract price, in lieu of raising money upon them by loan and then
   paying that money in discharge of the contract obligation.

2. ——: ——: INJUNCTION.  A provision in a notice to con-
   tractors that a city reserves the option to make payment in war-
   rants or city bonds is unenforceable, except with the consent of
   the contractor, and if such provision prevented competition to such
   an extent that it increased the cost of the work, the city should
   be enjoined from entering into the contract.

APPEAL from the district court for Lancaster county:
WILLIAM M. MORNING, JUDGE.  *Reversed.*

*John J. Ledwith* and *T. R. P. Stocker,* for appellant.

*C. Petrus Peterson, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and
GOOD, JJ., BEGLEY, District Judge.

BEGLEY, District Judge.

The city of Lincoln, having previously voted bonds to
the extent of $500,000 for the extension and improvement
of the city water and light plants, caused a notice to con-
tractors to be published calling for sealed bids to be

received for the construction of a water and light plant at Thirtieth and A streets of an estimated cost of $150,000. The notice to contractors contained the following provision: "The city reserves the option to make payment in warrants or city of Lincoln bonds." Sealed bids were received under said notice, all within the engineer's estimated cost, the best or lowest bid being approximately $98,000. Plaintiff, a resident taxpayer, brought this action to restrain the sale of the bonds, "except as provided by statute to the highest bidder for cash after proper and legal notice as required by law," and to enjoin the letting of any contract for the construction of the A street power station pursuant to notice to contractors, for the reason "that said illegal notice restricts and limits the prospective bidders solely and only to those who can complete the work on their own financial ability and, when completed, be willing to take bonds and not cash." A demurrer was filed to said petition, which was sustained and the action dismissed. Plaintiff has appealed.

Appellant's first contention is that the city officials have no authority to pay the contractor in city bonds because the city charter requires the bonds issued shall be sold to the highest bidder, after giving 30 days' notice. We find no such provision in the charter relating to water and light bonds. The above provision, contained in section 36 of the charter relates only to refunding bonds issued without the consent of the voters, which has no application here. Section 1, art. VI, and section 2, art. VIII, of the city charter provide the only authority for the issuance of water and light bonds, and they contain no specific method for sale, and therefore, the statute not requiring the bonds to be sold in any particular manner, the city officials were vested with a discretion as to the method of sale or disposal, provided the bonds were not sold for less than par value, and the courts, in the absence of fraud or an abuse of the discretion vested in such officials, have no power to control their action. 28 Cyc. 1596. Under such circumstances an exchange of the

bonds in payment of the amounts to become due the contractor for material and construction would be a sale of the bonds within the meaning of the charter, and if the bonds were exchanged for their face value, this would be a sale at par value.  Therefore, if the contract had been let, the city would have the right to pay the contractor with city bonds at par value, with the consent of the contractor, but the question here presented is:  Can the city legally limit the bidding to contractors who are willing to take the bonds in payment of said work?  ·

In 19 R. C. L. 1067, sec. 355, it is said:  "The terms and conditions which a municipal corporation may lawfully include in its specifications for the construction of a public work are, however, subject to the following limitations:  (1)  When the statute requires competitive bidding the conditions must not be such as to prevent or restrict full and free competition.  (2)  The conditions must not be such as to increase the cost of the work for the benefit of a favored class, and thus result in the taxation of the people of the municipality ·for a private purpose.  (3)  When the work is to be paid for by special assessment the conditions must not be such as to add an element to the cost of the work which cannot lawfully be met by special assessment."

The option here claimed by the city seems to confine the bidding to persons able to accept the city's bonds or warrants in payment, and would necessarily limit those who bid to such as are able to construct the building on their own financial responsibility, and in this manner restrict competitive bidding.  The bid which the contractor submits is regulated by the price he can receive for the bonds upon the market, and, unless he is a man of financial means, he must necessarily dispose of them quickly and at a discount, and to offset this must raise his bid, thus increasing the cost of the work for the benefit of a favored class who are financially responsible.

This question was decided in this state in the case of

*State v. School District,* 16 Neb. 182, where the court said: "When money is actually borrowed and received into the school district treasury, the contract for the erection of a schoolhouse, etc., may always be let at a reasonable cash price, after a fair competition among the contractors and builders of the vicinity; but when there is no money in the treasury, and the building is to be paid for in bonds, then the competition is confined to those persons of the neighborhood who combine the character of contractor and builder with that of capitalist or stock broker, and so in the latter case it is not only improbable, but well nigh impossible, that the same quality of building could be procured as economically as in the former."

In *Miller v. City of Des Moines,* 143 Ia. 409, 419, the court aptly said: "Government is instituted for the benefit of all the people and not for the benefit of any one class to the exclusion of others. City officials are charged with the collection and disbursement of vast sums of money to which all the people must contribute in proportion to their estate without regard to social position, political affiliation, religious belief or economic theories. Experience has shown that the interests of the taxpayers are best conserved by offering contracts for public work to the competition of all persons able and willing to perform it. When the opportunity to compete is fairly and openly offered, and contracts are fairly awarded, there is ordinarily no room for official or private graft at public expense, but just in proportion as competition is restricted, and the award is hedged about with express or implied conditions by which a favored person or a favored class is insured a preference over others of equal ability and capacity, public rights are imperiled and public interests are sacrificed. Such discrimination tends to monopoly, and involves a denial of the equality of right and of opportunity which lies at the foundation of republican institutions."

Appellees cite and rely upon the case of *Washington-Oregon Corporation v. City of Chehalis,* 76 Wash. 442.

In that case a statute referring to general fund bonds issued by any municipality provided that such bonds should be sold in such manner as the corporate authorities shall deem for the best interest of the city, and it was held that such provision was broad enough to permit the city to exchange its bonds in payment of amounts due a contractor under specifications providing that the contractor would be paid in bonds voted for that purpose, no question of fraud or restrictions on competitive bidding being involved. In this case the city charter only provides for the right to borrow money by the sale of the bonds at not less than par or face value. In addition, the petition herein contains the allegation, which is admitted by the demurrer, "That said notice, by being limited to contractors, restricts same from being sold to the highest bidder, and, further, said notice is a mere sham and pretext by means of which, by increased bids, the bonds may in fact be disposed of below par." The petition of the plaintiff, therefore, stated a cause of action, and if it be proved on the trial that said provision prevented competition to such an extent that it increased the cost of the work, the contract should not be entered into.

The judgment of the district court in sustaining the demurrer is, therefore,

REVERSED.

